YELVERTON, Judge.
ON REMAND FROM SUPREME COURT
This expropriation compensation appeal is before us on remand from the Louisiana Supreme Court. The issue on remand is severance damages to a tract which we referred to in our original opinion on appeal, 554 So.2d 233, as the southern remainder. As to that tract, on the appeal we set aside a judgment N.O.V. granted by the trial judge, who made an award of severance damages, and we reinstated the jury’s verdict, which was based on a finding that there were no severance damages to the southern remainder.
Michael and Nurit Wahlder, the landowners/defendants, applied to the Louisiana Supreme Court for review of our decision. The Supreme Court granted a writ and remanded the case to us with instructions “to reconsider assignment of error No. 2 in light of the Alexandria Ordinance on zoning.” 558 So.2d 561.
Assignment of Error No. 2 in the writ application declared that we erred when we made a determination that there was no severance damages to the southern most half of the expropriated property.
In their original application to the Supreme Court for a writ the relators argued that our error was in failing to properly consider certain alleged access problems. After the original writ application was filed the Wahlders filed a supplemental application attaching a certified copy of the zoning ordinance for the city of Alexandria. In their supplemental application, the Wahld-ers stated that the zoning ordinance was being attached to support an additional argument under Assignment of Error No. 2. The additional argument was that we erred when we failed to take into account the setback requirements, particularly on new construction, of the Alexandria Ordinance on zoning. The Wahlders argued that the setback requirements in the ordinance will readily show that the property is rendered virtually useless for new construction. The remand orders us to reconsider the assignment of error in the light of this zoning ordinance. We shall now do so.
So that the reader will better understand our analysis, we must explain that this is the first opportunity we have had to see this ordinance. The attachment of the zoning ordinance to the writ application was the first appearance of the zoning ordinance into this case, which was tried and decided by a jury back in early 1988. The zoning ordinance was not introduced in evidence at the trial, the trial judge did not take judicial notice of it, it was not before the jury that tried the case, there was no mention of it in the instructions to the jury, it was not mentioned by the trial judge when he granted a judgment N.O.V. in the case, and it was not in the record on appeal. We mention these facts early in this opinion so that the reader will understand that we are, in effect, now reviewing a judgment N.O.V. and a jury verdict based on new evidence.
When we initially reviewed this record and rendered our opinion, we were aware that there were setback restrictions and sight line requirements imposed by the City of Alexandria. Setback restrictions were discussed by all four of the appraisers in the case during their testimony to the jury, and considered by the appraisers in their evaluation of severance damages in the *707 case. It is clear from the testimony at trial that everyone knew there was a zoning ordinance, because on pages 534 and 535, just ten pages shy of the end of the testimony, the fact that it was not in evidence was discussed by the attorneys and the trial judge in the presence of the jury. If anyone believed there was a discrepancy between what the ordinance required and what the experts thought it required, nothing about such a discrepancy got into the record. The jury heard all the testimony, and both sides mentioned setback restrictions in their oral arguments to the jury, thus we assume that the jury was aware of setback requirements. However, since the ordinance itself was never introduced, nor quoted from, nor charged to the jury, and the language of the ordinance was never used in the questioning of the experts, nor in their responses to questions, we take it for granted that the jury was not aware of the setback requirements as precisely expressed in the language of the ordinance.
We have thoroughly reviewed this record again. We find that the information imparted by oral testimony to the jury — for the most part testimony elicited by the landowners’ attorney — regarding setback restrictions, differs somewhat from the setback restrictions that appear in the ordinance which has now made its post-trial appearance into the case.
Inasmuch as the remand requires that we reconsider the award of severance damages in the light of the ordinance on zoning, we will regard the ordinance applicable to the case as new evidence judicially noticed by the Supreme Court pursuant to La. R.S. 13:3712. We herewith order the Clerk of Court, Parish of Rapides, to receive the exhibit into evidence in this case, giving it Exhibit Number C-l.
THE ALEXANDRIA ORDINANCE ON ZONING
The relators rely on two regulations in the ordinance. The first is Art. VI, § 28-6.15 IV(d) which reads as follows:
On a corner lot in any district, nothing shall be erected, placed, planted or allowed to grow in such a manner as materially to impede vision between a height of two and one-half (2½) and ten (10) feet above the center line grades of the intersecting streets in the area bounded by the street lines of such corner lots and a straight line joining said street lines at points which are thirty (30) feet distant from the point of intersection, measured along said street lines.
The second is Art. VI, § 28-6.15 IX, which reads as follows:
Setback requirements for new construction in residential, business, commercial and industrial zones: All new building construction to be located adjacent to an arterial street, as designated by the adopted master street plan, shall be set back at least fifty (50) feet from the center line of the existing street right-of-way for two-way traffic flow and shall be set back at least forty (40) feet from the center line of the existing street right-of-way for one-way traffic flow.
TESTIMONY AT THE TRIAL RELATING TO SETBACK RESTRICTIONS
Our reconsideration of the award in the light of the ordinance necessarily begins with a discussion of setback requirements as revealed by the appraisers and heard by the jury. After that, we will explain the difference between the setback restrictions as heard by the jury, and the restrictions as we interpret them in the ordinance. Thereafter, we will examine that difference to determine whether the landowners are entitled to more money.
As pointed out in our original opinion, severance damage was claimed as to two remainders, a 7,476 square foot piece of property to the north, and a 13,991 square foot remainder to the south. It is the southern, larger remainder, that is the subject of writ application Assignment of Error No. 2. The southern remainder is a quadrilateral piece of commercial property.
William S. McCampbell, Jr., a real estate appraiser, testified for the landowners. He said that in Alexandria you can’t build within 20 or 25 feet of the street. His opinion was that given all of the street *708 right-of-way setbacks applicable to property “it just brings the lot smaller and smaller”.
Joe Glorioso, a real estate appraiser, testified for the landowners. He said:
The large remainder, it being 13,990 square feet and having a value of $142,-428.00, I’ve damaged 50 percent and the reason for that is it ... one of the requirements is that you have, and we’ve discussed that, Mr. McCampbell discussed that, there’s a line of sight requirement from the City that you can’t put anything on the corner that would block somebody’s sight. They won’t let you even park a car on the corner and that’s a 20 foot setback so you have 20 feet off of each. We’ve created four new corners here but if you were going to come back and put anything on here you have to consider the ... the old corners would be affected to, so this is ... these properties now have seven corners and on all seven of these corners you would ... you would have to have the 20 x 20 line of sight ... the land left for the line of sight requirement, that you don’t block anybody's sight drawing up to an intersection. That ... that hurts the value of this ... this property.
John D. Mowad, a real estate appraiser, testified for the State. This witness was questioned extensively by the trial judge. He analyzed the southern remainder in relation to other comparables in the area having similar size and configuration, and the uses to which those comparables had been put. -Mr. Mowad was aware of setback restrictions. He testified that the southern remainder’s highest and best use would not change, and that it suffered no severance damage.
Ben N. Hargis, a real estate appraiser, testified for the State. Explaining his use of comparables, he declared that an appraiser will make adjustments that are in his opinion reasonable, to match “location, size, zoning, topography, corner influence, and traffic count”. He said that that was what he did.
This witness, as did the other experts, testified regarding a 20 foot setback distance, which everybody apparently understood was required by the City of Alexandria. Most of the testimony regarding the 20 foot building setback requirement and the line of sight (at corners) setback requirement was given in connection with the smaller, northern tract, as to which all four appraisers agreed that it suffered because of its elongated configuration. The southern remainder, with which we are presently concerned, was also given attention; but the experts were evenly divided on whether it suffered severance damage because of setback and line of sight requirements. In our original opinion on appeal we agreed with the landowners and all of the appraisers that the northern tract suffered extensive severance damage because the setback requirements greatly reduced its useful size.
Hargis agreed with Mowad that the southern remainder lost no value from severance. He explained that the entire property, from which the center was expropriated, was once a long triangle. What was left was the small triangular point, or apex (the northern tract) and the larger base, the southern remainder. This larger base, nearly 14,000 square feet, was worth the same per square foot, in his opinion, after the taking, as before the taking. According to this expert, this southern remainder was the “heart of the [original] tract”, and therefore it lost no value from severance.
In closing arguments counsel for the landowners told the jury that both remainders would be reduced in effective size after “you took off the corners for sight reduction”, and that a building there would have to pass city inspection. The State’s comment in closing argument on this subject consisted of the following:
Mr. Cicardo talks about the sight flares and, you know, we had a flare-up about that, if you will. Testimony in the record is ... is that that thing is ... is from the middle of the roadway and we’re just talking about some little deals on the corners. Even using his own calculations, which I submit there’s no evidence in the record to support, he says you could only have a building area of *709 100 by 125 feet. That’s 12,500 square feet right dead in the middle.
As stated before, the jury responded by finding that the southern remainder suffered no severance damages. The trial judge rejected the jury’s determination, and found severance damages of 50%, granting a judgment N.O.V. calculated by that percentage. The trial judge reasoned that this was mandated by the property’s loss of access, diversion of traffic, and reduction in size. No mention was made in the written reasons for judgment of the effect of setback requirements.
On appeal by the State, we found that the jury’s verdict finding no severance damages to the southern remainder was not contrary to the evidence, because there was substantial evidence (without resorting to credibility determinations) reasonably supporting that verdict.
RECONSIDERATION IN LIGHT OF THE ORDINANCE
In order to reconsider severance damages in the light of the ordinance, we have had to make certain calculations. For these we used Exhibit D-3, an exhibit put in evidence by the landowners.
Section 28-6.15 IV(d), quoted above, sets forth the specific requirements of the ordinance for what the experts at trial referred to as view setback lines, applicable to corner lots. The ordinance describes these as “buffering” requirements.
A consideration of the buffering requirements of § 28-6.15 IV(d) requires measurements from street lines, which are defined in the ordinance, but there is no evidence in the record to establish where these street lines are. Doing the best we can, we are using the property lines as shown on Exhibit D-3. This way, whatever errors we make in calculations from street lines will be in favor of the landowners.
A corner lot is a lot abutting upon two or more streets at their intersection, according to the definitions section of the ordinance. Since this remainder is surrounded by streets, all four corners are governed by § 28-6.15 IV(d). Using the 1" = 20' scale of D-3, we created isosceles triangles in the four corners. The two equal sides were established by measuring 30 feet from the intersection along the property lines. By this means we discovered the buffering area (the area enclosed by the triangle) for each corner.
Then we established the setback line for construction as indicated by the testimony at trial. For this we simply drew a perimeter line 20' inside the property line.
We found that at none of the four corners would the buffering line as required by the ordinance, affect as much of the property as the setback figures assumed by the experts at the trial. Thus, reconsidering in the light of the buffering requirements of the ordinance, the landowners do not gain, and we do not change our view of the case as stated in our original opinion.
We then turned to a consideration of the other provision of the ordinance, dealing with setback requirements for new construction. One initial difficulty we encountered there was that we do not have the master street plan which shows whether any of the streets surrounding the property is an arterial street. Section 28-6.15 IX only applies to an arterial street as designated by the adopted master street plan. In obedience to our remand instruction that we consider the ordinance, we are assuming that all of the streets around the property are arterial streets, an assumption most favorable to the landowners. Another problem was that we have been unable to determine from the testimony whether MacArthur Drive service road is for two-way traffic flow or one-way traffic flow. The other streets around the property are for two-way traffic flow, according to D-3, thereby requiring application of the 50' setback line of § 28-6.15 IX. We are assuming that MacArthur Drive service road is likewise for two-way traffic flow, again the interpretation most beneficial for the landowners.
Applying these assumptions, we then calculated the setback distance of 50' as required by this ordinance for new construction, to determine whether this setback line, as to any side of the property, would *710 diminish the utility of the property for construction to a greater extent than would a 20' setback line all around measured from the property line.
We found that for the north and northeast sides, bounded as they are by the new access highway to Texas Avenue and by Texas Avenue itself, it makes no difference. These streets are 60' in width, and the measurement is 50', the setback required by the ordinance, measuring from their center line to a point 20' inside the property.
We found that applying the ordinance requirements does make a difference, however, on the side facing Hynson Street, and on the side facing MacArthur Drive service road. Hynson Street is 55' in width. Measuring from its center line, 50' will extend. 22W into the property, making this now a setback that takes in 2½' more than a 20' setback line would require. The angle formed by Hynson and the service road is less than 90°, so we constructed a right triangle, its base on Hynson and its apex on the service road at a point where a 20' setback line would intersect, in order to determine the length of the strip of land parallel to Hynson which, multiplied by 2½', would furnish us a reasonable approximation of the amount of additional land rendered unusable for construction on account of this ordinance. This figure turned out to be 362.5 square feet.
We made similar calculations along the service road. According to D-3, the center line of the service road is 40' from the property line. A point measured 50' from the center line is 10' inside the property line. Thus, the setback requirements on the service road renders unusable only 1175 square feet, when considered in the light of the zoning ordinance, as compared to 2400 square feet measured according to the testimony at trial.
It comes down to this. The property consists of close to 14,000 square feet. Our calculation of nonusable construction space based on the appraisers’ 20' setback lines as given at the trial is approximately 8,150 square feet. This would leave a usable construction space on the property of about 5,850 square feet. Our calculations applying the ordinance leaves 7,337.5 square feet of unusable space, leaving 6,662.5 square feet of usable space for construction. By application of the ordinance the landowners gain 812.5 square feet.
Although application of the ordinance appears to benefit the landowners, by a net gain of 812.5 square feet of usable space, more than the setback distances taken into consideration by the experts at the trial, we did not stop our reconsideration at this point. We reexamined the case to determine whether the loss of the 2V2' strip, amounting to 362.5 square feet off the Hynson side, standing alone would be of sufficient damage to require a modification of the award of severance damages. This required an assessment of the relative value of the Hynson frontage, as compared to the frontage on MacArthur Drive.
Our assessment of the evidence is that the frontage on MacArthur Drive service road is clearly more valuable than that on Hynson Avenue. This is illustrated in one way by the fact that the address of the property is MacArthur Drive service road. More telling, however, is an analysis of the comparables used by the various appraisers. McCampbell used three comparables: one fronted on MacArthur Drive, and none fronted on Hynson Avenue. Glorioso used four comparables: three were on MacArthur Drive, and none on Hynson. Mowad used eleven: five on MacArthur Drive and none on Hynson. Hargis used eleven: three on MacArthur Drive and none on Hynson. This convinces us that the Hyn-son Avenue side is less valuable. We conclude that an additional loss of 362 square feet off of the Hynson Avenue side, which translates into a mere .02% of the total area of the property, is not a sufficiently greater reduction in usable space to merit a change in our opinion initially rendered in this case. Besides, this small loss is greatly offset by the special benefit of increased usable space on the more valuable MacArthur Drive service road frontage, applying the ordinance.
*711 For the foregoing reasons, having reconsidered severance damages in light of the Alexandria Ordinance on zoning, we adhere to our original opinion herein.
KING, J., concurs in part and dissents in part for written reasons assigned.