647 So.2d 481 (1994)
STATE Of Louisiana THRU DOTD, Plaintiff-Appellant,
v.
Michael WAHLDER, et al., Defendant-Appellee.
No. 94-761.
Court of Appeal of Louisiana, Third Circuit.
December 7, 1994.
*483 Charles E. Soileau, Rayne, for State of La., thru DOTD.
James C. Downs, Alexandria, for Michael Wahlder et al.
Kathy J. Johnson, Virgil Russell Purvis Jr., Jonesville, for Wilson Oil Co.
Before YELVERTON, THIBODEAUX and PETERS, JJ.
YELVERTON, Judge.
This expropriation compensation case is again before this court, a sequel to State, DOTD v. Wahlder, 554 So.2d p. 233 (La.App. 3d Cir.1989), writ granted 558 So.2d 561 (La.1990), on remand 560 So.2d 705 (La.App. 3d Cir.), writ denied 565 So.2d 446 (La.1990). The present case comes from an intervention filed by Wilson Oil Company, Inc. which was severed from the Wahlder expropriation suit filed by the State of Louisiana, through the Department of Transportation and Development (DOTD). In the intervention Wilson Oil claimed to be the owner of certain improvements located on the property owned by the Wahlders.
The trial court found that Wilson Oil owned some of the improvements on the land and awarded $36,075 for the improvements, $2,570 for moving expenses and 25% of the total award as attorney's fees. The DOTD appealed this judgment claiming that the trial court erred in finding that Wilson Oil owned the property expropriated, in accepting Steve Cagle as an expert witness and, if Cagle was rightfully accepted, in finding that there was a sound basis for his value conclusions. Wilson Oil answered the appeal and claimed that the trial court erred in not awarding it damages for its lost profits for the remaining balance of its lease and future extensions of this agreement and for other property shown to be owned by Wilson.

FACTS
In 1987 the DOTD brought expropriation proceedings against Michael and Nurit Wahlder, the landowners, depositing $163,371 into the registry of the court as full compensation. The property is located in Alexandria.
On the western half of the property was a building used as a service station/convenience store named Uncle Harvey's. R.C. Henderson was also named a party to this action as having a leasehold interest in this portion of the property. Wilson Oil filed a petition of intervention alleging that Henderson had assigned his lease and all interests in the premises to Wilson Oil and that it was the owner of certain improvements located on the expropriated land.
*484 Henderson had entered into a lease with Wahlder on May 22, 1978. Henderson then assigned all his rights in this lease to Wilson Oil on August 25, 1983 which was consented to by Wahlder and his wife. Perk, Inc., a company owned by Henderson and his wife, conveyed its interest in certain property located on the premises to Wilson Oil on August 31, 1983. Wilson Oil then renovated the premises.
Although the assignment of the lease from Henderson to Wilson Oil was not filed in the public records, the DOTD knew that Wilson Oil was the lessee of the premises at the time of the expropriation by way of correspondence with Mike Wilson, the president of Wilson Oil, throughout 1987. However, the DOTD never named Wilson Oil as party to the expropriation. Wilson Oil's intervention, besides asserting ownership to some of the improvements, also made a claim for lost profits.
The intervention claim was severed from the claim of the Wahlders for additional compensation. The Wahlder case proceeded to trial and judgment was ultimately rendered in their favor by this court for the sum of $185,708.58.
Wilson Oil's intervention claim was finally tried on June 1, 1993. The trial court found that Wilson Oil had proved ownership of the gas distribution system on the premises which consisted of the tanks and pumps and related pipes and islands. The court awarded $29,600 for the distribution system. The trial court also found that Wilson Oil had proved ownership of the hoist and signs and awarded $6,475 for those items. The trial court found that Wilson Oil failed to prove its claim for lost profits. A moving expense award for $2,700 which the DOTD admitted it owed was also included in the judgment. In addition, the trial court awarded attorney's fees to Wilson Oil in the amount of 25% of the total award pursuant to La.R.S. 48:453.
The DOTD appealed this judgment raising three assignments of error. Wilson Oil answered the appeal seeking more money.

OWNERSHIP OF PROPERTY
The DOTD claims in its first assignment that the trial court erred in finding Wilson Oil the owner of certain items of property expropriated and entitled to compensation for these items.
Specifically, the trial court found that Wilson Oil owned the gas distribution system, hoist and signs and awarded compensation for these items. The DOTD claims that these items were owned by either Perk, Inc. or the Wahlders and not by Wilson Oil.
The ownership of the property is a finding of fact by the trial court which can not be set aside by this court unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). This finding is correct as to the items found to belong to Wilson Oil by the trial court, which we will now explain.
On August 31, 1983, Perk sold the assets on the premises, which included the gas distribution system and the signs, to Wilson Oil. On the same day that Wilson Oil was assigned the lease and purchased the assets on the premises, Mr. Wilson also bought Perk and Henderson Oil Company, Inc. from Henderson. Mr. Wilson, on behalf of Perk, on the next day signed a collateral mortgage in favor of Security First National Bank pledging the property that Perk had originally sold to Wilson Oil.
On the day that Perk pledged the property to the bank, it no longer had an interest in the property. Wilson Oil was the true owner of the property then and remained the owner. There are no documents to indicate that Wilson Oil ever sold this property. Although the propriety of the mortgage from Perk to the bank is not at issue here, one cannot validly mortgage another's property. Acadian Production Corp. v. McKendrick, 223 La. 79, 64 So.2d 850 (1953).
The DOTD claims that the Wahlders are the owners because Mike Wahlder and Mr. Wilson agreed that under the terms of the lease, the improvements became the property of the lessor. Actually, the lease states that the improvements become the property of the lessee, but all parties agreed that that was a typographical error. The DOTD claims that the lease terminated by *485 operation of law on the date of taking and the improvements became the property of the Wahlders and not Wilson Oil. La.Civ. Code art. 2697.
The pertinent part of the lease reads as follows:
It is agreed and understood that all buildings on the leased premises, at the termination of this lease, shall belong to and remain the property of Lessee[sic]Lessee shall have the right to remove, at the termination of this lease, all personal property or personal equipment placed on the leased premises by Lessee.
It is clear from this provision that only the buildings became the property of the lessors. All personal property or personal equipment placed on the leased premises by the lessee remained the property of the lessee. The lease further provided that the lessor had the right of first refusal to buy the personal equipment placed on the premises by the lessee which includes tanks, canopies or pumps.
The trial court was not clearly wrong in its determination that Wilson Oil was the owner of the gas distribution system, signs and hoist at the time of the expropriation by the DOTD. The evidence is clear that these items were the personal equipment that Wilson Oil bought from Perk or placed on the property when it renovated.
Wilson Oil also answered the appeal claiming the trial court erred in failing to find that it owned the canopy. The trial court found that Wilson's testimony was not sufficient to establish ownership of the canopy.
As stated before, the lease provides that the personal equipment of the lessee would include any canopies placed on the property by the lessee. The bill of sale of improvements which were located on the premises and sold by Perk to Wilson Oil did not include a canopy. However, Mr. Wilson testified that the canopy was completely rebuilt when Wilson Oil took over. Henderson testified that he had a small canopy on the diesel pump but that Wilson Oil installed another one later. We find that the testimony of Mr. Wilson was supported by Henderson and additionally supported by the terms of the lease which contemplated that the lessee would put canopies on the premises. The trial court was clearly wrong in finding that Wilson Oil did not own the canopy and should have awarded damages to Wilson Oil for the value of the canopy.
Wilson Oil agreed with the value placed on the canopy by the DOTD's expert appraiser, Ben Hargis, just as it did for the hoist and signs. Hargis valued the canopy at $8,463. He used a depreciation factor for the main improvements of 14%. Using this depreciation rate the value of the canopy was $7,278.18.

EXPERT WITNESS
As its second assignment of error the DOTD claims that the trial court should not have accepted Steve Cagle as an expert in the valuation of gasoline distribution equipment. It does not dispute that Cagle was an expert in the field of the installation of gas distribution systems, but contends that there was no evidence to support his expertise in the valuation/appraisal of it.
La.Code Evid. art. 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Experience alone is sufficient to qualify a witness as an expert; a college degree is not required. Manchack v. Willamette Industries, Inc. 621 So.2d 649 (La.App. 2d Cir.), writ denied, 629 So.2d 1170 (La.1993). Competency of an expert witness is a question of fact within the sound discretion of the trial judge. His assessment of the qualifications of experts will not be disturbed unless clearly wrong. State v. Davis, 445 So.2d 163 (La.App. 3d Cir.1984).
Cagle was the owner of C & J Pump Service, which was in the business of sales, service and installation of petroleum equipment. He had been installing pumps and tanks since 1968 and owned his own business since 1980. As a matter of fact, C & J Pump *486 Service was the company that performed the renovations to the property for Wilson Oil when it acquired the lease from Henderson. Cagle has made appraisals of in-place gas distribution systems since 1980. He had installed at least 150 gas distribution systems. His company was the sales representative for Gilbarco equipment which was the equipment located at this particular site. The company bought and sold used equipment. There were only twenty-five people in Louisiana in this type of business. It is true that Cagle never received any specific training in the valuation of gas distribution systems. However, he had many years experience dealing with the pricing of this equipment, new and used. We find that the court properly accepted him as an expert in this field.

VALUATION OF PROPERTY
Its third assignment of error is DOTD's complaint that there was no basis for Cagle's valuation of the gas distribution system and the award for the hoist and signs.
We first note that the award for the hoist and signs of $6,475 was based on an appraisal by the DOTD's own expert, Ben Hargis, which had been introduced at the trial to determine the Wahlders' compensation. It claims that this money had already been paid to the Wahlders. However, that is of no concern in this case. Wilson Oil proved it owned these items and the DOTD must compensate it for the loss of these items due to the expropriation. This same reasoning holds true for our award for the canopy.
The DOTD disputes the award of $29,600 for the gas distribution system. It claims that Cagle's valuation of the system was flawed. The trial court reviewed the Hargis appraisal in evidence and found that Hargis appraised only the underground tanks and islands. The court then found that the testimony of Cagle was the best evidence of the value of the system at the time of expropriation.
In an expropriation proceeding, a trial court's factual determinations as to the value of property and entitlement to any other types of damages will not be disturbed on review in the absence of manifest error. Likewise, where the testimony of the experts and witnesses is contradictory and where the judge decides to give more or less weight to the testimony of certain individuals, his findings cannot be overturned unless manifest error appears in the record. The opinions of experts regarding valuation are advisory and are used only to assist the court in determining the amount of compensation due in an expropriation case. The weight to be given to expert testimony is determined by the trier of fact based on the professional qualifications and experience of the expert, the facts and studies upon which his opinion is based, his familiarity with the locality of the property involved and the possible bias of the witness in favor of the side for whom he testifies. West Jefferson Levee District v. Coast Quality Construction Corp., 93-1718, 640 So.2d 1258 (La.1994).
Cagle testified that the gas distribution system consisted of three 10,000 gallon tanks, one 6,000 gallon tank, two dual electronic pumps, and three single standard gallonage and one high speed electronic Gilbarco pump with consoles to run it. The system is connected with galvanized piping with islands and the concrete over the top.
In his appraisal, Hargis appraised only the islands and three 10,000 gallon tanks at a total value of $9,800. John Mowad, a real estate appraiser, testified at trial for the DOTD. He had also filed an appraisal report for the DOTD in the Wahlder trial. He appraised the three 10,000 gallon tanks at $15,038 which included the underground plumbing and the labor involved. He valued the pump islands at $559. This value was based on information received from Petron, Inc. He used a 35% depreciation factor based on a twenty year life and actual age of seven years. He assessed severance damages for the three 10,000 gallon tanks at $23,135 and $206 for the islands. These two experts did not include the cost of the pumps. They also did not value the 6,000 gallon tank that was installed in 1984.
According to Cagle, the tanks had a period of use of only fourteen years to 1998 because the Department of Environmental Quality had new requirements that had to be met by that year.
*487 The improvements cost approximately $40,000 in January or February of 1984. Half of the cost was attributable to equipment and half of the cost was attributable to materials and labor. Cagle depreciated the equipment with a 21% depreciation rate because three of the fourteen years of life expectancy had been used.
We find that it was not clearly wrong to accept Cagle's method of valuation of the gas distribution system over the methods of the other experts. His analysis appears to have been more thorough and he was familiar with the cost of the improvements made to the gas distribution system in 1984.
However, the DOTD has pointed out some errors in regard to Cagle's calculations. We agree with the basis for these errors for the following reasons and recalculate the values using Cagle's method of valuation.
The DOTD claims that it was error to use a depreciation factor of 21% because the taking occurred in July of 1987 which meant three and one-half years of the fourteen years had expired. It also points out that Wilson Oil had leased the property from the DOTD until July of 1988 meaning that Wilson Oil got to use the property for four years.
We agree that Wilson Oil had the use of the improvements before the taking for longer than three years. However, an expropriation "determines" the value of the property taken at the time of the expropriation or, more accurately, at the time the expropriating authority deposited its estimation of compensation into the registry of the court. West Jefferson Levee District, 93-1718 at 1280. The DOTD deposited its estimation of compensation into the registry of the court on July 1, 1987. It does not matter that Wilson Oil had the use of the improvements until July 31, 1988. Wilson Oil was paying rent to the DOTD for the use of the property and improvements.
Since three and one-half of the fourteen years life expectancy had elapsed since its installation in 1984, we find that a depreciation factor of 25% instead of 21% should have been used. This means that the equipment had depreciated $10,000 instead of $8,400.
Another error committed by Cagle was his use of a $2,000 salvage value for the six pumps. This value was based on a Gilbarco Used Equipment Price Guide in use in 1990. The DOTD claims that it was error to use this guide since the taking occurred in 1988. It was pointed out at trial on the DOTD's cross-examination of Cagle that by 1990 the price of the used equipment had plummeted because of the surplus of used equipment with new standards and new products on the market. Cagle used the 1990 price guide because that was when he was asked to value the salvage. Looking at the Gilbarco guide for 1989, which was closer to the date of the taking and the first time the guide was published, we find that a AC1921 single pump was valued at $614 as opposed to $250 in 1990. Wilson Oil had four of these for a total salvage value of $2,456. Wilson Oil also had two AC3921 dual 2 pumps valued at $1,185 in 1989 as opposed to $500 in 1990. We find that the salvage for these six pumps should have been valued at $3,641 as opposed to $2,000.
For these reasons the gas distribution system should have been valued at $26,359 instead of $29,600.

LOST PROFITS
In its answer to the appeal Wilson Oil claims that it was error to disallow damages for lost profits for the remaining balance of its lease agreement with the Wahlders. It claims that it would have extended the lease if the expropriation had not occurred. Wilson Oil claimed $163,000 in lost profits.
Based on the testimony of Wahlder and Mr. Wilson, the trial court found that the lease would not have been extended beyond the date of expropriation. The trial court found that their testimony was equivocal on the extension of the lease. Its reasons for judgment further pointed out that Wilson Oil had a lease on a competing service station a few hundred yards away which had been sub-let to the same two men who had operated Uncle Harvey's.
An award for business losses may be made that would permit the landowner to retain equivalent financial circumstances *488 after the taking, but the award must be based on adequate proof. State Through Dept. of Hwys. v. Enserch, 559 So.2d 787 (La.App. 1st Cir.), writ denied, 567 So.2d 85 (La.1990). Lessee's business losses, if proved to have been caused by the State's taking or damaging of property, are compensable under "full extent of the loss" constitutional measure of recovery. La. Const. art. 1, § 4. Red River Waterway Com'n v. Fry, 628 So.2d 38 (La.App. 2d Cir.1993), writ denied, 633 So.2d 581 (La.1994).
After a review of the record we agree with the trial court that Wilson Oil failed to prove lost profits for two reasons. First, we agree that the testimony concerning a renewal of the lease for another five years was speculative. In a deposition Wahlder had testified that he and Wilson had never negotiated an extension of the lease for Wilson Oil because once Wilson took over the American Legion property he was no longer interested. Wilson admitted he leased property from the American Legion which was one block away from this location and was a more upscale type location. This was opened in July of 1986. By the terms of the lease it expired on September 1, 1988. The only testimony that supported the prospect of Wilson Oil renewing the lease was that of Wilson himself which was self-serving. We agree with the trial court that the evidence was speculative at best that Wilson Oil would have renewed for another five-year term.
Secondly, we find that the only testimony with regard to the amount of lost profits was the testimony of Wilson. There was no documentary evidence introduced to support the testimony of the number of gallons he sold and his profit on each gallon.
There was not adequate proof in the record to support a loss of profits. The trial court was correct in not awarding damages for lost profits.
For the foregoing reasons, the judgment of the trial court is amended to award Wilson Oil Company, Inc. $42,682.18 plus judicial interest from July 1, 1987 as compensation from the State of Louisiana, Department of Transportation and Development. In all other respects the judgment of the trial court is affirmed.
Costs of this appeal are assessed to the State of Louisiana, Department of Transportation and Development.
AMENDED AND AFFIRMED.