# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 05-1607


**ISLA RESOURCES, LLC, ET AL.**

**VERSUS**

**DANETTE TRAHAN FREY, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2003-0462
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***


**JOHN D. SAUNDERS**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of John D. Saunders, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.

**REVERSED AND REMANDED.**

**Stanford B. Gauthier, II**
**Attorney at Law**
**1405 West Pinhook Rd, Ste 105**
**Lafayette, LA 70503**
**(337) 234-0099**
**Counsel for Plaintiffs/Appellants:**
**Isla Resources, L.L.C.**
**Delphin Energy, L.L.C.**
**Louis E. Bernard, Jr.**

**D. Reardon Stanford**
**Hoyt, Hodge, & Stanford, L.L.C.**
**P. O. Box 3263**
**Lafayette, LA 70502-3263**
**(337) 234-1012**
**Counsel for Defendants/Appellees:**
**Lou King-Patin**
**King-Patin, Ltd.**

**Danette Trahan Frey**
**In Proper Person**
**Avoyelles Simsport Correctional Center**
**620 Martin Luther King Dr.**
**Simsport, LA 71369**

**SAUNDERS, Judge.**

Mr. Louis E. Bernard contacted Ms. Lou King-Patin of King-Patin, Ltd., an employment staffing agency, in July of 2001 in order to locate an individual to work as an "executive assistant" for his companies, Isla Resources, LLC and Delphin Energy, LLC. Based on the agency's recommendation, Mr. Bernard hired Ms. Danette Frey. In February of 2002, he discovered that Ms. Frey had embezzled over $31,000.00 from his companies.

Isla Resources, LLC and Delphin Energy, LLC filed suit against Ms. Lou King-Patin and King-Patin, Ltd., alleging that they were liable to them for damages because Ms. Frey was not properly "screened" by the employment agency. Before this matter came to trial, Defendants filed a motion for summary judgment. After the hearing on the motion, the trial court, after examining all the documentary evidence and testimony, determined that there was no genuine issue of material fact and granted summary judgment in favor of Ms. Lou King-Patin and King-Patin, Ltd. We reverse and remand.

**FACTS AND PROCEDURAL HISTORY**

In July of 2001, Mr. Louis E. Bernard, the sole owner and General Manager of Isla Resources, LLC and Delphin Energy, LLC (hereinafter collectively referred to as Bernard) contacted Ms. Lou King-Patin with King-Patin, Ltd., (hereinafter collectively referred to as King-Patin) an employment staffing agency, and requested that she locate an individual to work as an "executive assistant" for both companies. Based upon the recommendations of King-Patin, Bernard hired Ms. Danette Frey.

As "executive assistant," Ms. Frey was given responsibility for the checking accounts for both Isla Resources, LLC and Delphin Energy, LLC. In February of 2002, Mr. Bernard discovered that Ms. Frey had forged his signature on numerous

company checks and had stolen funds from company bank accounts. She had also cashed and retained funds from checks made payable to Isla and Delphin and made unauthorized charges on company credit cards. In total, Ms. Frey allegedly embezzled $31,348.10. She was subsequently terminated on February 28, 2002.

After terminating Ms. Frey, Bernard hired Mr. Russell Ancelet, a licensed private investigator, to perform a background search on her. Mr. Ancelet used Ms. Frey's name, address, aliases, date of birth, social security number, and residences over the last ten years to determine whether she had a prior arrest, conviction, or was a party in a civil suit. Through his investigation, he found that she had been convicted of criminal offenses in East Baton Rouge Parish, Louisiana, and San Marcos, Texas and New Braunfels, Texas.

Bernard subsequently bought suit against King-Patin, alleging that Ms. Frey was not properly "screened" and that King-Patin was liable to them for damages incurred as a result of the improper screening. King-Patin, filed a motion for summary judgment. At the hearing, the court, after examining all the documentary evidence and testimony, determined that there was no genuine issue of material fact and granted King-Patin's motion for summary judgment. Bernard now appeals.

**ASSIGNMENT OF ERROR**

The trial court erred in granting Defendants' Motion for Summary Judgment.

**STANDARD OF REVIEW**

Appellate courts conduct a *de novo* review of rulings on motions for summary judgment. "It is well established that a summary judgment shall be rendered if the

2

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." *Alfred Palma, Inc. v. Crane Servs. Inc.,* 03-0614, p. 3 (La.App. 3 Cir. 11/5/03), 858 So.2d 772, 774 (quoting *Shelton v. Standard/700 Assocs.*, 01-0587, p. 5 (La. 10/16/01), 798 So.2d 60, 64-65) ; La.Code Civ.P. art. 966(B).

**LAW AND ANALYSIS**

In determining whether a trial court's granting of summary judgment was appropriate, appellate courts conduct a *de novo* review of the record. *Richard v. Hall,* 03-1488 (La. 4/23/04), 874 So.2d 131. If the evidence presented at trial is subject to conflicting interpretations, then summary judgment is not appropriate. *Federated Rural Elec. Ins. Corp. v. Gulf S. Cable Inc.*, 02-0852 (La.App. 3 Cir. 11/12/02), 833 So.2d 544.

Appellants argue that their claim is a damage claim arising out of a breach of contract, not a tort claim, as the defendants argue in their brief in support of summary judgment. They argue that they entered into a contract with Appellees, and offer the July 30, 2001 letter sent to Mr. Bernard from Ms. King-Patin as evidence of the Appellees' undertaking relative to the staffing position. The letter states, "This candidate was chosen from a select few for the position . . . Because of our high standards at King-Patin, Ltd., we have a rigorous selection process. Each candidate considered for an employment position with one of our clients must undergo extensive interviewing and screening." However, Ms. King-Patin's affidavit failed to recite that her staffing agency checked any of the job references listed by Ms. Frey. Further, Appellees argue that there is no evidence that it contractually obligated themselves to

3

perform a criminal background check on any of the candidates for employment. They assert that they did not "warrant" anything to Bernard; he simply "assumed" that they would conduct one.

It is clear that King-Patin and Bernard entered into a contract. What is not clear are the parameters of the contract entered into by the parties or the extent of the contractual obligations undertaken by Bernard and King-Patin. Bernard paid King-Patin over $2,000.00 for its services. However, there is a dispute as to the extent of the services for which Mr. Bernard paid. Additionally, there is a dispute as to the quality of services that King-Patin was to provide to Bernard. The parties dispute whether there was an obligation to perform a criminal background search, and whether the one performed was adequate. Additionally, there is a dispute as to whether Ms. Frey was adequately screened by the agency in exchange for Mr. Bernard's payment. Taking these issues into consideration, we find that the question of what was included in the King-Patin's services remains an issue of fact that the trial court must determine.

Appellants argue that a material issue of fact exists as to whether there was adequate "screening" of Ms. Frey. As mentioned earlier, Ms. King-Patin's affidavit fails to state that her staffing agency checked any references before recommending Ms. Frey to Bernard for the position of "executive assistant." However, in the letter to Mr. Bernard, dated July 30, 2001, thanking him for allowing King-Patin to assist him in his hiring of Ms. Frey, Ms. King-Patin stated that, "Each candidate considered for an employment position with one of our clients must undergo extensive interviewing and screening."

Appellants introduced the affidavit of Ms. Angela Tauzin, a witness with several years of experience in the staffing agency business, to support their argument.

4

Ms. Tauzin was requested by Appellant counsel to review all documents produced by Appellees relevant to the screening process undertaken by King-Patin. In her review of King-Patin's screening process, Ms. Tauzin had her assistant check the references listed on Ms. Frey's employment application. From this inquiry, she determined that Ms. Frey had not been employed at two of the three listed references, and that the third reference did not have the supervisor named on the application in their employ.

Ms. Tauzin stated that had she been responsible for the placement of Ms. Frey, she would not have taken the interview process any further at that point. Based on her experience in the staffing business, she opined that the core function of a staffing business is to verify the work history, credentials, appropriateness of placement, and ability of an employment applicant before recommending him to an employer. Ms. Tauzin further stated that it appears that King-Patin did not check out Ms. Frey's employment history, as her submissions of fraudulent information concerning her work history should have disqualified her from consideration of any nature. In her opinion, the decision of King-Patin to recommend Ms. Frey as an acceptable candidate for any type of position demonstrates a total disregard for the well-being of its client.

Appellees argue that Ms. Tauzin's testimony is not admissible and should not be considered because it contains hearsay. At the hearing on the motion for summary judgment, counsel for Appellees objected to the evidence. However, the court never ruled on whether the affidavit contained hearsay. Therefore, we have no ruling to review, and the issue of whether this evidence contains hearsay is not before us. Ms. Tauzin's affidavit was made a part of the record when it was introduced into evidence, and therefore, we consider it in our *de novo* review of the record.

5

Appellees assert that Ms. Tauzin is not an expert, and therefore, the affidavit containing her testimony is not admissible, as it states her opinion. Under La.Code Evid. art. 701, a witness who is not testifying as an expert is limited to testifying to opinions or inferences that are rationally based on his perception and which are helpful to a clear understanding of his testimony or the determination of a fact in issue.

They argue that Ms. Tauzin does not meet the standards of *Daubert v. Merrell DowPharmaceuticals, Inc.*, 509 U.S 579, 113 S.Ct. 2786 (1993), and therefore, does not qualify to testify as an expert in the staffing industry. They assert that her experience in the staffing business is limited to working only a couple of years in sales with Link Staffing and subsequently running her own employment staffing agency, PNR Personnel, which went out of business after only three years. Further, Appellees point out that Ms. Tauzin was never licensed, was not a member of any professional staffing associations, never wrote any books, reports, papers, or published any kind of documentation regarding the staffing industry or the screening of applicants. She has also never placed anyone as an executive assistant, nor has she screened anyone for such a position. Further, she does not consider herself an expert in the field of applicant screening.

Ms. Tauzin was listed as an expert witness in Appellants' pre-trial discovery. However, when her affidavit was introduced into evidence, and at the hearing on the motion for summary judgment, nothing was said about her status as an expert witness. We cannot rule on whether Ms. Tauzin is an expert witness, as no determination was made by the trial court on this issue. We note that the factors listed in *Daubert* are not requirements that must be met, nor are they applicable to all types of expert testimony. *Cleland v. City of Lake Charles,* 02-805, 02-1463 (La.App. 3 Cir. 3/5/03), 840 So.2d

6

686, *writ denied*, 03-1380, 03-1385 (La.9/19/03), 853 So.2d 644, 645. In fact, we have held that experience alone is sufficient to qualify a person as an expert. *State through Dept. of Transp. and Development v. Wahlder*, 94-761(La.App. 3 Cir. 12/7/94), 647 So.2d 481. Considering Ms. Tauzin's experience in the staffing business, especially the fact that she owned and ran an employment staffing agency for three years, it is at least arguable that she could have been qualified to testify as an expert witness. While she may not consider herself an expert in the field, and she may not have published any books on the screening of applicants, Ms. Tauzin has spent a number of years in the staffing industry, including several years running her own staffing agency.

Although the court made no determination of whether Ms. Tauzin qualified as an expert witness, Ms. Tauzin's affidavit was introduced into evidence and was made a part of the record. Accordingly, the testimony of Ms. Tauzin found in the record will be taken into consideration in determining if a factual issue exists as to whether proper screening was performed on Ms. Frey by King-Patin. We find that it does.

Appellants also assert that there is a material issue of fact in dispute regarding whether there was a criminal background search performed on Ms. Frey before the date of her hire. Ms. King-Patin's testimony indicates that before she provided Mr. Bernard with Ms. Frey's resume, she contacted Rhino Referral for a background check. However, Mr. Larry Vegas d/b/a Rhino Referral testified that he was first contacted on August 30, 2002, approximately seven months after Ms. Frey's termination. Despite the clear discrepancy in testimony, Appellees maintain that this is not "material" to the outcome of the case. They counter by arguing that although Mr. Vegas could not corroborate that a background check of Ms. Frey had been

7

performed, the point is moot, because when Rhino Referral ran the criminal background check on Ms. Frey in August of 2002, no criminal history was discovered. Therefore, Appellees assert that even had a criminal background check been performed prior to Ms. Frey's employment, they would have found nothing to alert them or to prevent them from recommending her to Bernard. Appellees' argument brings another issue to the surface: was an adequate search performed?

Appellants introduced the testimony of Mr. Russell Ancelet, a licensed private investigator who was employed by Mr. Bernard to perform a criminal background search on Ms Frey shortly after her termination. Using Ms. Frey's name, date of birth, address, and social security number, Mr. Ancelet obtained Ms. Frey's resident locations over the last ten years. Mr. Ancelet contacted the appropriate entities in each resident jurisdiction to determine whether Ms. Frey had a prior arrest, conviction, or was a party in a civil suit. From his search, he determined that Ms. Frey had been convicted of criminal offenses in East Baton Rouge Parish, Louisiana, and San Marcos and New Braunfels, Texas.

Appellees argue that the affidavit of Mr. Ancelet contains inadmissable hearsay, and therefore, should not be considered. Although Appellees' counsel objected to the evidence at the hearing on the motion for summary judgment, the court did not make a ruling on the admissibility of the affidavit. Therefore, we do not have a ruling to review, and the issue of its admissibility is not on appeal before us. However, because the affidavit was introduced into evidence and has been made a part of the record, we consider it in our *de novo* review.

Additionally, Appellants introduced the testimony of Mr. F. Ray Mercke, Jr., an independent contractor for Kroll Background Investigations, with eight years

8

experience marketing to background investigations to large companies in the Acadiana area as well as several Fortune 500 companies. Mr. Mercke offered testimony regarding the practice of conducting background investigations. In his affidavit, Mr. Mercke testified that a criminal records search is conducted by running a Social Security trace which provides information such as whether the Social Security Number is validly issued, to whom it belongs, and the current address, as well as other known previous addresses where the individual to whom it belongs resides. Using the information found through the Social Security trace, Mr. Mercke searches the records of the jurisdictions where the individual has resided in the last ten years to determine whether there are any felony or misdemeanor filings. Mr. Mercke testified that King-Patin could have conducted a criminal background search such as this one for the cost of approximately $60.00. Further, he opined that had they conducted a search such as this, the previous convictions of Ms. Frey would have been discovered.

Appellees contend that Mr. Mercke's testimony is irrelevant to the case at hand because he does not market to staffing companies such as King-Patin. Instead, he markets to large companies, consisting of over 20,000 employees and Fortune 500 companies outside of the Louisiana area. Although Mr. Mercke does not market his services to staffing services such as King-Patin, his testimony is still relevant to the general procedure used in criminal background searches. He has been in the background search business for several years and has personal knowledge about the procedures used in these searches.

Clearly, the testimony of Ms. King-Patin and Mr. Vegas as to whether a background check was performed prior to Ms. Frey's hiring is not consistent. There

9

also remains a question as to whether the background check performed was adequate and whether Ms. Frey's criminal background would have been discovered had a proper check been performed prior to her employment with Bernard. Offering the testimony of Mr. Ancelet and Mr. Mercke, Appellants argue that a material issue of fact exists as to whether a properly conducted criminal background search would have revealed her criminal background, as they seemed to find Ms. Frey's criminal records with relative ease. Although neither of the witness affidavits introduced into evidence were from individuals that marketed to companies exactly like King-Patin, they both described very similar criminal background search procedures. Both testified that the residence addresses over the last ten years were used to determine which jurisdictions in which to search for criminal records.

In her affidavit, Ms. King-Patin stated, "Rhino Referral is the local industry standard for performing such background checks on prospective employees. At the hearing on the motion for summary judgment, counsel for Appellees stated that it was "undisputed that Rhino Referral is the industry standard" in the Lafayette area. However, counsel for Appellant disputed this fact at the hearing, asserting that Mr. Mercke's affidavit stated otherwise. In Mr. Mercke's affidavit, he stated, "Mr. Larry Vegas d/b/a Rhino Referral is not the industry standard in Lafayette, Louisiana and is not known by Affiant. The industry standard in Lafayette is Kroll Background, America and other national firms such as Choice Point, Avert, Wells Fargo, and Hire Check." Clearly, there is a dispute over the issue of whether Rhino Referral is the industry standard. Considering the evidence, we find that there is a material issue of genuine fact that must be determined by the trial court regarding whether a criminal

background search was performed on Ms. Frey before she was hired, and whether a properly conducted background search would have revealed her criminal record.

After a review of the record, we find that several genuine issues of material fact remain to be determined in this case. We find that there is a material issue of fact regarding the extent of the contractual obligations undertaken by the parties. A material issue of fact also exists as to whether King-Patin properly screened Ms. Frey, as a simple reference check revealed that she had never been employed at two of the three listed references on her employment application. Further, we find that an issue remains as to whether a properly conducted background search would have revealed her criminal background.

Due to the fact that we have found that there are several genuine issues of material fact that remain undetermined in this case, we cannot affirm the trial court's granting of summary judgment in favor of Appellees, King-Patin. Therefore, we reverse the decision of the trial court and remand the case to the trial court.

**CONCLUSION**

The judgment of the trial court is reversed and remanded. Costs of the appeal are assessed against Appellees.

**REVERSED AND REMANDED.**