899 So.2d 516 (2005)
Ken SMITH, d/b/a B & K Music
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT.
Ken Smith, d/b/a B & K Music
v.
Mike Unkel.
Nos. 2004-C-1317, 2004-C-1594.
Supreme Court of Louisiana.
March 11, 2005.
Rehearing Denied May 13, 2005.
*519 Charles C. Foti, Jr., Attorney General; Bertrand & Soileau, Charles E. Soileau, Rayne, Counsel for Applicant (No. 2004-C-1317).
Norman Business Law Center, Merrick J. Norman, Jr., Christopher Shannon Hardy, Counsel for Respondent (No. 2004-C-1317).
Cunningham & Doucet, Randy Allen Doucet, Lee Ann Archer, for Applicant (No. 2004-C-1594).
Norman Business Law Center, Merrick J. Norman, Jr., Christopher Shannon Hardy; Milling Benson Woodward, LLP, Michael Dean Hebert, Lafayette, Counsel for Respondent (No. 2004-C-1594).
Rehearing Denied in 2004-C-1317 May 13, 2005.
KIMBALL, Justice.
We granted certiorari and consolidated these cases to first address the court of appeal's judgment, in matter 04-C-1317, affirming the district court's granting of the plaintiff's motion for JNOV on the issue of loss of leasehold advantage damages, setting aside the portion of the jury's verdict awarding no damages for this claim, and awarding damages in the amount of $100,647.00. Further, we granted certiorari to review the court of appeal's decision affirming the judgment of the district court awarding plaintiff attorney's fees in the amount of $78,428.00 and expert witness fees in the amount of $12,742.75. A review of the record in this case indicates that the evidence overwhelmingly supports plaintiff's claim for damages and that the jury's failure to award these damages was unreasonable. Therefore, we conclude that the court of appeal did not err in affirming the district court's granting of plaintiff's motion for JNOV on this issue of loss of leasehold advantage damages and its award to plaintiff for attorney fees.
Additionally, we granted certiorari to address the court of appeal's judgment in matter 04-C-1594 affirming the district court's judgment awarding plaintiff $38,384.12 for the value of improvements plaintiff made to leased property. After reviewing the plain language of La. C.C. art. 495, we conclude that plaintiff is not entitled to the value of his improvements because he abandoned the improvements and made no attempt to remove them, or any timely demand for their removal. Accordingly, we reverse the court of appeal's *520 decision affirming the district court's judgment awarding plaintiff the value of his improvements.

Facts and Procedural History
In 1962, defendant, Mike Unkel, acquired ownership of a building located at the intersection of Highway 165 and Highway 190 in Kinder, Louisiana. The Town of Kinder owned the land where the building was located. Unkel leased the land from the Town for a small yearly rental fee that over the years slowly increased to the final rate of $400 per year. Unkel's oral lease with the Town provided for an indefinite term, automatically renewing yearly upon payment of the rent. Beginning in 1981, plaintiff, Ken Smith, began subleasing the property and building from Unkel as the primary place of his business, B & K Music. Smith and Unkel initially had an oral lease that set the rent at $200 per month and provided Smith the opportunity to lease the property for as long as he desired.
Smith leased the commercial property for his business for a period of 18 years. During this time, plaintiff made various improvements to the interior part of the building, mostly with the consent and knowledge of the defendant.[1]
With the opening of the Grand Casino Coushatta nearby, traffic on Highway 165 substantially increased. Subsequently, the state determined the highway needed widening through additional lanes to accommodate the increased traffic. To accomplish this end, the state began to purchase and expropriate the land along the stretch of highway where B & K Music was located. Aware of such activity, Smith drafted a written lease memorializing the original oral lease agreement between himself and Unkel. Both parties signed this lease agreement sometime in 1998, and the document was recorded in 1999.
In January 1999, after appraising the property, the Department of Transportation and Development (hereinafter "DOTD") offered Unkel $208,025.00 to purchase his interest in the property, specifically $67,725.00 for the building and $140,300.00 for his leasehold interest. At the same time, DOTD sent Smith an eligibility letter notifying him that he might be eligible for an award because of the expropriation. The eligibility letter informed Smith he would have to move within 90 days of the letter, or 30 days from a subsequent notification letter. When Unkel presented Smith the sale document, Smith, whose signature was required by the state as an intervenor in the sale, refused to sign. Smith's refusal to sign the document delayed the sale and the state threatened to initiate expropriation proceedings. Subsequently, Unkel sought to evict plaintiff, who had refused to vacate the property. In February 1999, Smith filed his first lawsuit related to this matter against Unkel seeking a mandatory injunction to maintain the lease, and later amended the complaint to include a declaratory judgment that plaintiff was entitled to compensation from the state for his building improvements.
In the interim, Smith contacted DOTD regarding what compensation was available to him for his improvements, interest, and costs related to the impending sale. Smith was notified that as a tenant, he was entitled to seek moving expenses, the expenses associated with reestablishing his business, reimbursement of improvements, loss of leasehold advantage, and loss of business attributable to a new location if *521 applicable to his particular situation. Smith sent David Davis, a DOTD official handling the purchase of the property, a letter itemizing those improvements, with costs and labor, he alleged to have made to the building during his 18-year occupancy. However, sometime during the negotiation process DOTD officials terminated compensation negotiations with Smith.
According to Smith, DOTD mistakenly had agreed to pay Unkel $208,025 for the building when in fact this figure included the just compensation due Smith for his improvements and leasehold interest in the building. Smith alleged that once DOTD realized its mistake, it then attempted to mitigate its damages and expenses by stonewalling Smith, refusing to pay him his damages, and insisting he obtain his compensation from Unkel. Smith argued that DOTD and Unkel then devised a plan to avoid paying him any compensation by ignoring DOTD regulations and delaying Smith's claim. In the meantime, Unkel would attempt to evict Smith, and if successful, DOTD would refuse Smith's claim arguing that as a former tenant Smith was not entitled to any compensation for the purchase of the property. In its defense, DOTD claims that it did not terminate or delay its negotiations and contact with Smith, but rather merely suspended the negotiations while its officials attempted to determine exactly what interest both Smith and Unkel each had in the property at question.
Nevertheless, Smith filed a separate suit against the state for inverse condemnation in November 1999 seeking damages for his leasehold interest, relocation expenses, loss of business/opportunity, and improvements. Smith and Unkel entered into a stipulated judgment of dismissal in the first suit in which the parties agreed that the lease would terminate effective December 31, 1999, "due to the imminent expropriation by the State of Louisiana." This suit was dismissed with prejudice on December 29, 1999; however, both parties reserved all rights and causes of action against the state.
Smith vacated the building in November and moved his music store into a renovated building he owned a few blocks off Highway 165. In December, Unkel asked for Smith's key to the building. At that time, Smith requested additional time to remove his belongings from the property to which Unkel responded by giving Smith until the 31st to remove his belongings upon payment of December's rent. Smith paid the additional rent in order to obtain the additional time to remove his items. However, on the 31st, Smith again requested one additional day to finish his move and Unkel agreed. On January, 1, 2000, Smith returned his key to the building to Ms. Unkel indicating that all items he desired to keep had been removed from the premises.
The sale of the building to the state was finalized in January 2002. However, a month after the sale was completed, Smith's attorney sent a letter to defendant demanding payment for the improvements under La. C.C. art. 495. By this time, the building had already been vandalized or stripped of any improvements.[2] Unkel formally refused Smith's demand for the *522 value of improvements by letter dated March 29, 2000. In April 2000, Smith filed the instant litigation against Unkel alleging he was entitled to reimbursement from Unkel under codal law for his improvements, which had become component parts of the buildings. Smith alleged Unkel had refused to reimburse him for the improvements, despite having been compensated for their value by the state in the sale.
Initially, both of the instant suits were consolidated for trial at the request of Unkel. However, Unkel subsequently motioned for severance of the two cases due to trial date conflicts with his then attorney of record, and the district court granted the motion to sever.
Prior to trial, there were disputes as to DOTD's compliance with producing all required and requested documents to Smith. Although the district court found DOTD had not completely responded to Smith's discovery requests and such failure had directly affected Smith's ability to properly present his case, the district court did not sanction DOTD because it could not determine if such failure was "an act of omission or commission by DOTD."
A jury trial commenced on July 9, 2001, in Smith's suit against DOTD. Smith introduced evidence regarding the value of improvements he had made to the building. Smith also testified as to the expenses incurred in renovating and moving to his new location, as well as the amount of money he has lost in business due to his new location. Further, Smith introduced testimony establishing that had it not been for the state's expropriation project for the highway expansion, his lease with Unkel, as well as Unkel's lease with the Town of Kinder, would have continued indefinitely. Smith also offered expert testimony which valued his leasehold advantage at $1000 per month of the lease. DOTD offered contradicting expert testimony which valued Smith's leasehold advantage at zero dollars since his lease was considered a short term lease and had no sellable market value.
The jury found that DOTD did "take or damage Ken Smith's property or business without compensating him fully for his loss," and awarded Smith $15,260.00, which consisted of $10,000.00 for cost of relocation, $4,760.00 for moving expenses, and $500.00 for loss of improvements, specifically for his B & K Music sign. The jury, however, did not allocate any damages for loss of leasehold advantage, inconvenience, or loss of opportunity. Smith filed a Motion for JNOV due to the jury's failure to award damages for leasehold advantage, loss of business, and loss of opportunity. Smith also filed a motion to set attorney fees in this matter. Citing La. R.S. 13:5111(A) and those factors set forth by this court in State, Department of Transportation and Development v. Williamson, 597 So.2d 439 (La.1992), the district court found the attorney fees requested by Smith to be reasonable and awarded fees to Smith in the amount of $78,428.00. Further, the district court awarded expert fees totaling $12,742.75, finding that the opinions of the experts were reasonable and necessary for presentation of Smith's case, and awarded litigation expenses in the amount of $5,290.64.
The district court denied the JNOV with respect to the loss of opportunity and loss of business arguments. However, the court granted that portion of the JNOV requesting damages for loss of leasehold advantage, finding the testimony at trial "clearly established that plaintiff enjoyed a leasehold advantage in the subject business location" and "reasonable persons could not arrive at a contrary verdict." The court noted that both the plaintiff and defendant's experts valued the monthly leasehold advantage at $1,000, which was *523 defined as the difference between the market rent and contract rent ($1,200 minus $200 in this particular instance). The court found the only difference between the expert opinions was that DOTD's expert, Thompson Core, testified that the lack of a specific term on the lease made it impracticable for him to value a future leasehold advantage, while Smith's expert testified that the leasehold advantage was $56,027.00 for five years and $100,647.00 for ten years. Accordingly, the district court awarded $100,647.00 for leasehold advantage. DOTD appealed the verdict. Smith answered the appeal and argued that the jury and district court erred in not awarding damages for loss of business, loss of opportunity, and inconvenience. He also argued the trial court erred in failing to sanction DOTD for failure to produce requested documents. Lastly, Smith requested additional attorney fees for the appeal.
On appeal, the court of appeal found no error in the district court's grant of the JNOV on the issue of leasehold advantage. Smith v. State, DOTD, 03-1450 (La.App. 3 Cir. 4/28/04), 872 So.2d 594. The court noted that the only mitigating evidence against awarding damages for leasehold advantage was DOTD's expert's testimony that any amount Smith spent on renovating the location would reduce the amount of his leasehold advantage, but since no testimony was presented to enable one to infer the necessity of significant repairs, this evidence was not substantial enough to outweigh the evidence favoring the advantage. The court of appeal also found that considering the evidence in the light most favorable to the DOTD, the district court did not err in its denial of Smith's motion for JNOV in regards to loss of business and loss of opportunity. Further, the court found no manifest error in the jury's failure to award damages for inconvenience. In regards to Smith's assertion of error for the jury's failure to award the lost value of improvements, the court of appeal took notice of the fact Smith had been awarded damages for his improvements in the instant consolidated case against Unkel, and therefore, declined to award additional damages.[3] The court of appeal also noted, given the district court's broad discretion in these areas, it would not disturb the court's award for expert fees or reasonable attorney fees absent manifest error. Furthermore, the court of appeal awarded Smith $10,000.00 in additional attorney fees for the work performed post-trial. Finally, the court of appeal found the district court did not abuse its discretion in refusing to sanction DOTD for its failure to produce all relevant documents.
In Smith's suit for improvements against his lessor, Unkel, the district court rendered judgment in favor of plaintiff in the amount of $38,384.12, plus legal interest. The district court specifically concluded that many of the building improvements made by Smith were component parts according to La. C.C. arts. 465 and 466, and therefore, under art. 495, these component parts belonged to Smith and he was entitled to compensation by the building owner, Unkel. In its reasons for judgment, the district court noted:
It's uncontroverted that Mr. Smith did not remove his improvements from the building. He wanted the value and not the improvements. Mr. Unkel is well aware that Mr. Smith wanted compensation *524 for the improvements that he made... At no time did Mr. Smith relinquish his request for compensation for the improvements. So the question on the Court's mind is, when the lease terminated and Mr. Unkel sold the property had Mr. Unkel elected to keep the improvements... Mr. Unkel admits that he did go back after the sale and take an air conditioner. The Court believes that this act along with the sale constitutes an election to keep the improvements made by Mr. Smith ...
The district court, therefore, held Unkel must pay Smith the enhanced value of the component parts Smith added to the building. However, the district court denied Smith's argument that the doctrine of unjust enrichment was applicable to his claim and did not allow recovery under that theory. Unkel suspensively appealed the district court's judgment against him.
In an unpublished opinion, the court of appeal found no error in the district court's findings and reasoning in awarding damages to Smith under La. C.C. art. 495 since the factual findings were supported by the record. The court of appeal rejected Unkel's challenge to the evidence and testimony relied upon by the district court in determining the value of the improvements. The court indicated Unkel did not offer expert testimony to contradict the value of improvements alleged by Smith. Furthermore, the court of appeal noted that the district court has great discretion in qualifying witnesses as experts and in assessing the credibility of such testimony, and in light of the record, the court could not find that the district court was "clearly wrong" in considering this testimony. The court of appeal also rejected Unkel's exceptions of res judicata, no cause of action, and no right of action which were first raised in the appellate court. The court of appeal denied the exception of res judicata because no proof of this ground appears in the record. The court denied Unkel's exceptions of no cause of action and no right of action, finding that Unkel did not show the petition indicates beyond doubt that Smith can prove no set of facts in support of any claim which would entitle him to relief or that Smith had no real and actual interest in the action.
Upon separate applications of both DOTD and Unkel, we granted certiorari and consolidated the two cases to review the court of appeal's decision affirming the judgment of the district court granting plaintiff's motion for JNOV and the judgment awarding attorney and expert witness fees, as well as the court of appeal's decision affirming the district court's judgment awarding plaintiff the value of his improvements under La. C.C. art. 495. Smith v. State, DOTD, 04-1317 (La. 10/29/04), 885 So.2d 570; Smith v. Unkel, 04-1594 (La.10/29/04), 885 So.2d 570.

Law and Discussion

Judgment Notwithstanding the Verdict
La.Code of Civil Procedure art. 1811 provides for the trial court's use of JNOV. A JNOV may be granted on the issue of damages or the issue of liability or it may be granted on both issues. Davis v. Wal-Mart Stores, Inc., 00-0445, p. 4 (La.11/28/00), 774 So.2d 84, 89. The grounds upon which the district court may grant a JNOV are not specified in Article 1811; however, this court has set forth the standard to be used in determining when a JNOV is proper as follows:
[A] JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party *525 that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
Trunk v. Medical Center of Louisiana at New Orleans, 04-0181, pp. 4-5 (La.10/19/04), 885 So.2d 534, 537 (citing Joseph v. Broussard Rice Mill, Inc., 00-0628, pp. 4-5 (La.10/30/00), 772 So.2d 94, 99). The JNOV strict criteria is predicated on the rule that "when there is a jury, the jury is the trier of fact." Trunk at p. 5, 885 So.2d at 537.
When reviewing a district court's grant of a JNOV, an appellate court must initially determine whether the district judge erred in granting the JNOV by employing the above-mentioned criteria in the same manner as the district judge in deciding whether to grant the motion. VaSalle v. Wal-Mart, Stores, Inc. 01-0462, p. 11-12 (La.11/28/01), 801 So.2d 331, 339. In other words, the appellate court must determine whether the facts and inferences adduced at trial point so overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary finding of fact. Id. at p. 12, 801 So.2d at 339. If the answer is in the affirmative, then the appellate court must affirm the district court's grant of JNOV. Joseph at p. 5, 772 So.2d at 99. However, if the appellate court determines that reasonable minds could differ, then the district judge erred in granting the JNOV and the jury verdict should be reinstated. Id.
In the instant case of Smith v. State, DOTD, the district court granted a JNOV on the issue of damages for loss of leasehold advantage because it found that the testimony given at trial "clearly established that plaintiff enjoyed a leasehold advantage in the subject business location." The district court noted that both Smith and DOTD's expert witnesses valued the monthly leasehold advantage at $1,000.00. However, the court stated that DOTD's expert, Thompson Core, failed to give the leasehold advantage a future value because (1) any amount of money spent by Smith in repairing/renovating the leased premises would reduce the amount of the advantage, and (2) the lack of a specific term of Smith's lease made it "impracticable" for him to value the future advantage. On the other hand, the district court noted that Smith's expert calculated the advantage for two terms: a five-year advantage valued at $56,027.00 and a ten-year advantage valued at $100,647.00. The court noted that "there was no evidence to suggest that the ongoing lease of the building by Mr. Smith would not continue for quite some time." Further, the court concluded that the only way the leasehold advantage could have no value would have been for the jury to conclude that the future costs of restoration would have equaled that of the leasehold advantage. After reviewing the record in the case, we find that reasonable minds could not have differed on the valuation of the leasehold advantage based on the evidence presented at trial. We therefore conclude the district court was correct in granting plaintiff's motion for JNOV on the issue of loss of leasehold advantage damages.
Regarding Smith's damages for loss of leasehold advantage, the record reveals that both parties' experts did compute a *526 monthly leasehold advantage of $1,000.00. Smith's expert, real estate economist David Reinauer, defined leasehold advantage or interest for the jury as the tenant's advantage if his actual rent is under the market value of the property leased. He stated three things were necessary to calculate a future leasehold advantage: (1) the difference between the market value and the actual rent of the property; (2) the interest rate; and (3) a period of time for the lease. Market rent is defined as the rent that a comparable property would rent for in an open market. Reinauer determined the market value of the property to be between $1,200.00 and $1,500.00 per month, then took the lower value as the market value for his calculations. The actual rent paid by Smith was $200.00 per month; thus the monthly leasehold advantage was $1,000.00. Reinauer then chose a period of time for the calculation, between five to ten years. He chose this period of time based on the depositions in the case, the history of the property, and the rental history of a small community like the Town of Kinder. Thus, he came to the determination that Smith did have a leasehold advantage of between approximately $50,000 to $100,000, depending on the projected lease period.
DOTD's expert, real estate appraiser Thompson Core, appraised the leased property, B & K Music, for DOTD on two different occasions. Core also computed the leasehold advantage at $1,000.00 per month. However, he noted that since Smith had spent a considerable amount of money repairing and renovating the building during his lease, such activity would make this leasehold calculation less accurate because it would likely lower the monthly value of the advantage to less than $1,000.00. Even so, Core did not further explain exactly what the net reduction in the advantage would be, nor what amount of future renovations would be necessary to reduce the net advantage. Core also emphasized that the term of the lease was "vital" in determining any leasehold advantage. In his opinion, the market doesn't recognize month-to-month lease terms to have any value. Thus, based on the facts that both the Unkel-Town of Kinder lease and the original Unkel-Smith lease were oral leases, considered to be short term agreements and could be terminated at any time, Core testified that there was no leasehold advantage in this leased property.
However, Core's conclusion on the short term nature of the lease agreements is not supported by the testimony and facts adduced at trial. The jury was presented with numerous testimony regarding the solidity and long-standing nature of both the land and building leases. Smith testified that the original oral lease agreement had been in effect for 18 years and was intended to be indefinite, and the only reason the written lease had a year-to-year option that he no longer exercised was the sale to DOTD. Furthermore, Mayer Fred Ashy of Kinder, Louisiana, testified that had it not been for the highway expansion, Unkel's lease with the Town would have continued as long as he wanted and as long as he continued paying his lease, then "nothing would have changed." In addition, Unkel testified that had it not been for the state and its highway expansion project, Smith would not have been asked to terminate the lease. As Unkel testified, he "had no intentions of putting [Smith] out" prior to the DOTD's involvement.
At the close of evidence, the jury awarded Smith $15,260 for relocation expenses, moving expenses, and for improvements. However, the jury failed to award any compensation for loss of leasehold advantage. The assessment of the appropriate amount of damages by a jury is a *527 determination of fact that is entitled to great deference on review. Wainwright v. Fontenot, 00-0492, p. 6 (La.10/17/00), 774 So.2d 70, 74. A thorough review of the record in this case, nonetheless, indicates the jury's failure to award damages for loss of leasehold advantage suffered by Smith due to DOTD's purchase of the commercial property he leased as his principal place of business was not reasonable. Both experts valued the monthly leasehold advantage at $1,000.00. All testimony of those individuals with knowledge and power over the term of the two leases at issue agreed that had it not been for the highway expansion project, both leases would have remained as they were and Smith would still be leasing the property at issue. Only the testimony of Core, the DOTD's expert, indicated any short-term nature of the lease agreement. In fact, Smith had been leasing the same property from Unkel for over 18 years with no change in terms, except for the written lease executed only as a precaution by Smith in preparation for the highway expansion project. Based on these facts, reasonable minds could not have differed on the assessment of damages. The jury's failure to award damages for loss of leasehold advantage was in error. Therefore, we find the district court's granting plaintiff's JNOV was correct and affirm the loss of leasehold award in the amount of $100,647.00.

Attorney Fees
The DOTD alleges the district court erred when it awarded the plaintiff attorney fees in the amount of $78,428.00. DOTD alleges such fees are excessive, especially in light of the fact that the jury only awarded Smith $15,260.00 and the court granted this attorney fees award prior to its granting of plaintiff's JNOV and its additional award of $100,647.00.
As an initial matter, we note that attorney fees are not allowed except where authorized by contract or statute. Huddleston v. Bossier Bank and Trust Co., 475 So.2d 1082 (La.1985). In a case where judgment is cast against DOTD for compensation for the taking of plaintiff's property in a proceeding other than expropriation, such as inverse condemnation, La. R.S. 13:5111(A) provides statutory authority for such an attorney award. The statute provides, in pertinent part:
A. A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding. Any settlement of such claim, not reduced to judgment, shall include such reasonable attorney, engineering, and appraisal fees as are actually incurred because of such proceeding. Actions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies shall prescribe three years from the date of such taking.
(Emphasis added). The legislature authorized the award of "reasonable" attorney fees "incurred" by the plaintiff as result of the proceeding. Therefore, we must review the district court's award in light of the reasonableness of these fees.
It is well settled that courts may inquire into the reasonableness of attorney fees as part of their inherent authority to regulate the practice of law, "[r]egardless *528 of the language of the statutory authorization for an award of attorney fees or the method employed by the trial court in making an award of attorney fees." Rivet v. State, Dept. of Transp. and Dev., 96-0145, p. 11 (La.9/5/96), 680 So.2d 1154, 1161. In State, Department of Transportation and Development v. Williamson, 597 So.2d 439, 442 (La.1992), this court set forth those factors to be taken into consideration in determining the reasonableness of attorney fees as follows: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. These factors are derived from Rule 1.5(a) of the Rules of Professional Conduct, which guide the legal profession in setting reasonable attorney fees based on skill, prevailing charges, time involved, relationship, and others. Rivet at p. 12, 680 So.2d at 1161-62.
We note that the district court, in its ruling setting attorney fees applied these factors to the case at hand and made the following conclusions:
1. The plaintiff prevailed in his claim for damages for inverse condemnation of his business location.
2. Even though plaintiff and plaintiff's counsel entered into a contingency fee agreement, the relevant language of the agreement fixes the attorney's fees owed by plaintiff to plaintiff's counsel as those "attorney fees awarded by the court."
3. The responsibility incurred by the attorney was substantial. The contingency fee agreement underscores this assumed responsibility.
4. The importance of the litigation to the client was extraordinary. Indeed, the object of the taking was an irreplaceable business location.
5. The issues involved in this inverse condemnation action appear to have been more involved than those of an "ordinary" inverse condemnation action (i.e. the alleged conspiracy between DOTD and Mike Unkel, issues relative to the purported overpayment made to Mr. Unkel by DOTD, issues relative to ownership of leasehold improvements, issues concerning the leases and the history of the dealing between lessors and lessees, and issues related to leasehold advantage).
6. The attorneys for plaintiff and defendant were quite knowledgeable about the issues involved in this matter.
7. The attorneys for plaintiff and defendant were exceedingly well-prepared and skillfully presented their respective client's cases to the jury.
8. The claimed number of hours expended by plaintiff's counsel appear to be reasonable.
9. The hourly rate charged by plaintiff's counsel for his time, his associate's time, and administrative time are reasonable.
Based on these findings, the district court found the attorney fees requested by Smith's counsel to be reasonable. An independent review of the record in light of the Williamson factors indicates the district court award of attorney fees was in fact reasonable.
The ultimate result obtained by the attorneys for Smith was a good one. At the time the district court made this attorney fee award, plaintiff had only recovered $15,260.00 in this litigation; however, the district court subsequently granted plaintiff's motion for JNOV and awarded an *529 additional $100,647.00 in compensation to Smith. Thus, in light of this additional award, $78,428.00 for the attorney fees does not appear too excessive. The litigation was highly important to Smith considering he had lost a highly profitable business location with no compensation for such loss and the amount of money involved in the litigation was assuredly important to plaintiff, and ultimately, the award was substantial. Novel issues of law are found in this litigation, such as the alleged conspiracy theories and the existence of two leasehold advantages, as well as the contentious relationship with DOTD and lessor which required extraordinary skill and knowledge on the part of the attorney. The trial on this matter may have lasted only a few days, but the litigation was filed in 1999 and the district court's judgment wasn't filed until 2003. Furthermore, the number of motions to compel and discovery requests necessitated by DOTD's failure to produce requested documents resulted in many additional hours of time and court appearances by Smith's attorney.
At a hearing on this matter, Smith's attorney presented evidence regarding the fee bill. Plaintiff's attorney billed a combined 652.4 hours to the case amongst himself and his staff. Testimony regarding the average billable rate for the area indicated a low of $125 per hour and a high of $250. Smith's attorney fees were billed at $175, the average rate.
Based on the aforementioned factors and their application to the particulars of this case, as well as the evidence presented at the hearing on this issue, we cannot say the district court abused its discretion in its award of attorney fees in the amount of $78,428.00.

Expert Witness Fees
Next, DOTD argues that the expert witness fees awarded by the district court are excessive and should be reduced. In total, the district court awarded plaintiff $12,742.75 for expert fees, $9,232.75 for Mr. Gragson and $3,510.00 for Mr. Reinauer. The crux of the argument is that if this court were to decide to reverse the JNOV, then the expert witness fees would be excessive considering the opinions of these experts were rejected by both the jury and this court, and thereby, such testimony was "not useful in determining the award to Smith."
In its judgment awarding the expert fees, the district court stated it found "the opinions of the said expert witnesses were reasonable and necessary for presentation of plaintiff's case." The court of appeal held the district court did not abuse its discretion in granting these awards. The experts at issue testified at trial regarding the loss of leasehold advantage, loss of opportunity, loss of business, and value of lost improvements allegedly suffered by Smith due to DOTD's purchase of the property at issue. Smith's case relied heavily on the findings of these experts who prepared reports and analyzed various data for their testimony at trial. Based on the record before us, we cannot say the district court abused its discretion when it awarded plaintiff the requested expert witness fees.

Exception of Res Judicata
In the second of the consolidated cases, defendant Mike Unkel asserts the court of appeal erred in denying his exception of res judicata, which he raised for the first time on appeal. The doctrine of res judicata precludes subsequent litigation when all of the following are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties in the two matters are the same; (4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation; and (5) the cause or causes *530 of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. La. R.S. 13:4231; see also Burguieres v. Pollingue, 02-1385, p. 8 (La.2/25/03), 843 So.2d 1049, 1053. Unkel asserts that the stipulated judgment dismissing with prejudice Smith's initial suit against him bars any future litigation regarding the lease, including the instant litigation.
La.Code of Civil Procedure art. 2163 affords a party the opportunity to raise peremptory exceptions, such as res judicata, for the first time in the appellate court. However, the article specifically states that for such an exception to be considered "proof of the ground of the exception" must appear of record. Id. The article does allow for remand of the case to take evidence on the exception if it is based on prescription. Id. Numerous cases by this court and the lower appellate courts have strictly interpreted this article and denied exceptions of res judicata if insufficient evidence appears on the record. See Wallace v. Wallace, 167 La. 149, 118 So. 869 (1928); Rohm v. Jallans, 134 La. 913, 64 So. 829 (1914); Capitol House Preservation Co. v. Perryman Consultants, Inc., 01-2524 (La.App. 1 Cir. 12/31/02), 836 So.2d 680, writs denied, 03-0323 (La.4/21/03), 841 So.2d 794, 03-0324 (La.4/21/03), 841 So.2d 795; Giammanchere v. Ernst, 96-2458 (La.App. 4 Cir. 5/19/99), 742 So.2d 572; Robinson v. Ieyoub, 97-2204 (La.App. 1 Cir. 12/12/98), 727 So.2d 579. However, within the last decade several circuits have remanded cases to the trial court to hear evidence on exceptions of res judicata when the record lacks evidence thereof. See Mandalay Oil & Gas, L.L.C. v. Energy Dev. Corp., 01-0993 (La.App. 1 Cir. 7/3/02), 867 So.2d 709; National Union Fire Ins. Co. v. Cagle, 94-322 (La.App. 3 Cir. 11/2/94), 649 So.2d 642; Stansell v. Stansell, 622 So.2d 1203 (La. App. 2 Cir.1993). These cases cite Lewis v. Lewis, 155 La. 231, 99 So. 202 (1923), as precedent for their decisions to remand. However, in Lewis, this court remanded the exception of res judicata to the trial court because the grounds alleged for the exception did not come into existence until after the appeal had been lodged and is clearly distinguishable from these latter cases. Id; see also State ex rel. Continental Supply Co. v. Fontenot, 152 La. 912, 94 So. 441 (1919)(remanding case to trial court to hear evidence on recent amended court decision that provided grounds for the exception of res judicata).
In the instant litigation, the court of appeal denied Unkel's exception of res judicata because no proof of the ground was in the record. Unkel argues to the contrary, urging that the petitions and judgment regarding the initial suit is contained in the record. However, a close examination of the record indicates that only the stipulated judgment of dismissal is contained in the record, and not the actual petitions. Furthermore, even if it was appropriate to review the record of the consolidated case for evidence on this exception, again only the judgment and not the petitions relating to this initial suit between Unkel and Smith can be found. Considered on its own, this stipulated judgment on its face is not sufficient to rest the exception of res judicata.
Next, Unkel asserts that if there is insufficient evidence in the record to support a claim of res judicata, this court may remand the case to the district court "for the purpose of permitting the introduction of evidence in support of the pleas of estoppel and res judicata." Fontenot, 94 So. at 445. However, Unkel's reliance on this aberration in the jurisprudence of res judicata exceptions is misplaced. Article 2163 is clear and unambiguous: if *531 grounds of the exception of res judicata do not appear in the record, the exception cannot be considered for the first time in the appellate court and must be denied. Since the record does not contain the necessary petitions and documents to support the claim of res judicata, the exception was properly denied by the court of appeal.

Louisiana Civil Code article 495
In his primary assignment of error, Unkel alleges the district court erred in applying La. C.C. art. 495 to this matter and awarding Smith the value of his improvements pursuant to this article. La. C.C. art. 495 provides:
One who incorporates in, or attaches to, the immovable of another, with his consent, things that become component parts of the immovable under Articles 465 and 466, may, in the absence of other provisions of law or juridical acts, remove them subject to his obligation of restoring the property to its former condition.
If he does not remove them after demand, the owner of the immovable may have them removed at the expense of the person who made them or elect to keep them and pay, at his option, the current value of the materials and of the workmanship or the enhanced value of the immovable.
La. C.C. art. 495 affords a lessee the right to remove improvements or attachments made to the immovable of another with his consent. If the lessee fails to remove the improvements after demand, the owner must compensate the lessee for the improvements upon his election to keep said improvements. Id.
However, Unkel asserts that La. C.C. art. 495 does not apply because it is a supplementary remedy that applies only in "in the absence of other provisions of law or juridical acts." He urges the applicable provision in this matter is La. C.C. art. 2697, which pertains specifically to a lessee's right to damages in the case of expropriation. At the time of the events in question, Article 2697 provided:
If, during the lease, the thing the [sic] totally destroyed by an unforseen [sic] event, or it be taken for a purpose of public utility, the lease is at an end. If it be only destroyed in part, the lessee may either demand a diminution of the price, or a revocation of the lease. In neither case has he any claim of damages.
Applying the provisions of this article, Unkel claims that Smith has no recourse against him for the value of the improvements, but rather must seek his compensation from the expropriating body, DOTD.
Article 2697 does provide that when a lease is terminated by the taking or expropriation of the leased property, the lessee has no claim for damages against the lessor, only against the expropriator. La. C.C. art. 2697; State Through Dept. of Highways v. Holmes, 253 La. 1099, 221 So.2d 811 (1969)(J. Sanders dissenting). Even if the expropriator's compensation to the landowner included the cost of the lessee's improvements, the lessee can still seek reimbursement for the improvements from the expropriator, but not from the landowner. DOTD v. Wahlder, 94-791 (La.App. 3 Cir. 12/7/94), 647 So.2d 481, 486.
A clear and unambiguous reading of this article, however, indicates that it does not apply to the current issue and the particular facts of this case. First, the lease between Unkel and Smith had already terminated prior to Unkel's sale to DOTD, thus, the event in question did not happen "during the lease." Furthermore, the property was not "taken" by DOTD, but rather sold to the state, albeit under *532 the threat of expropriation. Louisiana statutory law and jurisprudence does not recognize sales under the threat of expropriation to be analogous with actual expropriation proceedings or takings pursuant to the law. Thus, Article 2697 does not apply to protect Unkel from Smith's claims for reimbursement of his improvements. Therefore, "in the absence of other provisions" we must address whether the lower courts properly applied the provisions of Article 495 to the instant matter and awarded Smith the value of his improvements.
A close examination of the language of Article 495 indicates that it does not provide for Smith's recovery under the particular facts of this case. Paragraph one of the article allows a person to remove those improvements, designated as component parts, which were made to the immovable of another with the owner's consent subject to the obligation to restore the property to its former condition after removal. La. C.C. art. 495. The second paragraph provides for the owner of the immovable to demand the removal of the items. Id. If the improver fails to remove the improvements after demand, the owner has the choice to remove the items at the cost of the improver, or elect to keep the improvements and pay the improver the value of the improvements. Id. However, no provision of Article 495 allows a lessee to seek compensation from the lessor for his improvements without an election by the lessor to retain them. Whether or not a lessor has elected to keep said improvements is a factual determination made upon the individual circumstances of the case. Annina v. Eschette, 00-1892 (La.App. 1 Cir. 11/21/01), 814 So.2d 13, writ denied, 01-3375 (La.3/8/02), 811 So.2d 880; Taylor Lumber Co. v. Fuller, 292 So.2d 878 (La.App. 1 Cir.), writ denied, 294 So.2d 839 (La.1974). Furthermore, a literal reading of this article indicates that an election to keep the improvements requiring compensation to the improver must first be preceded by a demand.
A review of the record indicates Unkel never made a demand upon Smith to remove the improvements; therefore, the remedies and procedural requirements of Article 495 were never triggered. Furthermore, Smith's own testimony proves that he never attempted to remove any of the improvements for which he is now seeking compensation from Unkel. Specifically, when asked by defense counsel if he ever had any intention of removing any of the improvements from the building, Smith replied: "No ... I wanted to be paid for." He also testified that he never made any request to Mr. Unkel to remove any of the items in the building. Evidence presented at trial indicated that Smith moved out of the property in question during mid-November 1999. However, when Unkel attempted to retrieve Smith's key to the building on December 10, 1999, Smith requested more time to remove additional items from the building. Unkel agreed to give Smith until the end of the month to remove his belongings and improvements, provided Smith pay rent for the month, which he agreed to do. Again, on December 31st when Unkel attempted to retrieve the key, Smith requested an additional day to remove those items he wanted to keep. On January 1, 2000, Smith returned the key to Unkel's wife, Adele Unkel. At that time, Ms. Unkel asked if Smith was able to get everything out of the building he desired, to which Smith replied "yes." Smith had ample time to remove those improvements he desired to keep, and it appears no person restrained him from doing so.
However, on February 28, 2000, one month after the sale to the state was completed, Smith's attorney issued a formal demand letter to Unkel notifying him of *533 Smith's request for the value of his improvements. Unkel refused Smith's demand by formal letter on March 29, 2000. By the time Smith made his formal demand for his improvements, Unkel no longer owned, nor had access to the building and its improvements and could not return the actual improvements to Smith. Further, Unkel testified that by that time, the building had been stripped of most items; however, no conclusive evidence was presented as to who actually removed the improvements from the building. Smith suggested Unkel and his workmen removed the items in question, but Unkel denied this claim. Nevertheless, Unkel did admit to removing one air conditioner from the building for use in a camp, but did not do so until one month after the completion of the sale and only after Smith indicated he did not desire any of the items left in the building.
Moreover, Article 495 requires the improver to restore the immovable to its original condition after removal of component parts. Smith testified that he made no attempt to restore the building to its original condition.
Based on the aforementioned facts, the elements of La. C.C. art. 495 are not satisfied in these particular circumstances, and therefore, this article does not allow Smith to recover the value of his improvements. Article 495 provides a mechanism for a person to retain those items of value he incorporates or attaches to the property of another. Further, the article provides a mechanism for the landowner to have those improvements removed from his property, if he so desires, by demanding their removal. Id. If upon demand the improver fails to remove, the owner may remove the items or elect to keep them and then pay the value of the items to the improver. Id. However, Article 495 does not appear to contemplate a situation where the improver abandons his improvements, then makes a demands to be compensated for their value. See Riggs v. Lawton, 231 La. 1019, 93 So.2d 543 (1957) (applying the pre-revision La. C.C. art. 2726[4] regarding lessor-lessee obligations relating to improvements). Thus, Article 495 does not require a lessor to pay for improvements to a lessee if the lessee abandons the improvements upon the termination of the lease. Pylate v. Inabnet, 458 So.2d 1378, 1391(La.App. 2 Cir.1984) (citing Riggs v. Lawton, supra). Furthermore, use of one's property, and other acts of ownership, which necessarily result in the use of improvements placed upon the premises by a lessee who does not remove the improvements upon termination of the lease, but rather abandons them, does not constitute an election within the contemplation of Article 495. See id. However, denying a lessor the right to remove improvements upon termination of the lease could be construed as an election, as required by Article 495. See Annina at p. 6, 814 So.2d at 17.
Smith did not attempt to remove the improvements upon termination of the lease, but rather abandoned the improvements and requested compensation from Unkel upon his sale of the building. Unkel's sale of the building, including the improvements, was an act of ownership which necessarily resulted in the use of the improvements. Yet, this act was not an election to keep said improvements. It would *534 be illogical to have required Unkel to strip the building of Smith's improvements prior to the sale to DOTD when the building was going to be destroyed. Furthermore, we do not find Unkel's removal of one air conditioner after the completed sale an election to keep all of the improvements. Since Smith abandoned the improvements without demand or any attempt of removal, he cannot seek compensation under Article 495 after he notified Unkel of such abandonment. Furthermore, Smith did not make his demand to Unkel for his improvements until the sale was complete. At this time, Unkel was no longer in a position in which he could follow the procedural requirements of Article 495 and demand the removal of the improvements by Smith himself or return the improvements to Smith. Therefore, those requirements necessary for the recovery of the value of one's improvements under Article 495 were not satisfied in this particular case. Thus, the trial court's reliance upon Article 495 to compensate Smith for the value of his improvements to Unkel's building was in error and a misapplication of the law. We therefore, reverse the court of appeal's decision affirming the district court's judgment finding Unkel liable to Smith in the amount of $38,384.12 for the value of his improvements.

Remaining Assignments of Error
Smith asserts that if this court finds Article 495 is inapplicable to the instant matter, the judgment awarding him the enhanced value of his improvements should still be valid under the doctrine of unjust enrichment as set forth in Article 2298 of the Louisiana Civil Code. Although this is not the first time Smith has raised the applicability of unjust enrichment to his claim for reimbursement, he cannot rely on this claim at this stage of the litigation. The district court specifically denied Smith's claim regarding unjust enrichment, finding the doctrine did not apply to the facts in this particular case. Although Smith did answer Unkel's appeal to the third circuit, the record does not indicate Smith raised this issue as an error. Furthermore, Smith did not apply to this court for a writ on this issue, and therefore, the lower court's judgment regarding unjust enrichment is final. See Chaisson at pp. 7-8 n. 1, 708 So.2d at 380 n. 1.
Furthermore, since we find that La. C.C. art. 495 does not apply to the particular facts of this case, we pretermit Defendant Unkel's remaining assignments of error.
In sum, in matter 04-C-1317, we find no error in the district court's granting of plaintiff's JNOV on the issue of loss of leasehold advantage. Further, we neither find error in the district court's award to plaintiff for expert witness fees nor in the district court's judgment awarding plaintiff attorney's fees in the amount of $78,428.00. In the matter of 04-C-1594, we find no error in the court of appeal's denial of the defendant's exception of res judicata. However, we do find the district court erred in finding La. C.C. art. 495 applies to Smith's claim for improvements and awarding damages pursuant to the article. We therefore reverse the trial court's judgment awarding Smith the value of his improvements and dismiss Smith's claims for these damages.

Decree
For the above reasons, we find in matter 04-C-1317, Smith v. State, Department of Transportation and Development, the judgment of the court of appeal is correct as it affirmed the district court's granting of the plaintiff's motion for JNOV for loss of leasehold advantage damages and as it affirmed the district court's award of attorney's fees and award of plaintiff's expert witness fees. The judgment of the court *535 of appeal in matter 04-C-1317 is therefore affirmed.
With respect to matter 04-C-1594, for the above reasons, we find the judgment of the court of appeal correct as to its denial of Unkel's exception of res judicata. We further find the court of appeal erred in affirming the district court's judgment awarding the plaintiff the value of his improvements based on Article 495 since the article is not applicable to the particular facts of this case. We therefore reverse the judgment of the district court and dismiss plaintiff's claim for the value of his improvements. The judgment of the court of appeal in matter 04-C-1594 is therefore affirmed in part and reversed in part.
04-C-1317 AFFIRMED.
04-C-1594 AFFIRMED IN PART AND REVERSED IN PART.
WEIMER, J., concurs in part and dissents in part and assigns reasons.
JOHNSON, J., concurs in part and dissents in part.
VICTORY, J., concurs in part and dissents in part for the reasons assigned by Justice WEIMER.
VICTORY, J., concurs in part and dissents in part for the reasons assigned by Justice WEIMER.
WEIMER, J., concurs in part and dissents in part.
I respectfully dissent from the majority opinion in 04-C-1317.
With the opening of the Grand Casino Coushatta near the town of Kinder and the exponential increase in traffic through Kinder, I believe it was reasonable for the jury to conclude the nominally priced lease would not long survive. The Mayor testified that 50 new businesses opened in Kinder following the opening of the casino and traffic on Highway 165 more than doubled form 5,000 cars to 12,000 cars per day. Practically speaking, the entire business complexion of this community changed with the opening of the casino. As such, the jury was well within its discretion and reasonable to discount any value attributable to the leasehold agreement.
There was no legal impediment to the termination of the lease. Because of the location of the casino, the contract rent no longer reflected contemporary market factors. The lack of a long-term lease period made it impractical to value a future leasehold advantage. The jury reasonably rejected speculative evidence that this lease would last indefinitely given its nominal rental amount and the changes to the value of rental property brought by the casino. Lastly, the rent advantage ceased when Smith terminated the lease and moved to a building he owned, which was located near the leased premises.
Because the jury was not unreasonable in its determination to grant limited damages, the attorney fees and expert fees should also be reduced proportionately.
I concur in the decision reached in 04-C-1594.
NOTES
[1] Both parties agree that the lease agreement gave Smith the right and responsibility to maintain the interior of the building as necessary for his business, while Unkel was responsible for the exterior maintenance of the property.
[2] At trial, Smith and Unkel disagreed as to who stripped the building of its improvements. Smith claimed he left the building in good condition with the improvements still intact. He alleged that Unkel's workmen removed the improvements after he moved out during the month of January 2000. On the contrary, Unkel claimed the condition of the building was in disarray before he entered the building in February to retrieve one air conditioner, after the sale to the state was completed. Unkel asserted he did not have the improvements removed.
[3] Smith did not seek writs to this court in regards to the court of appeal's judgment denying the claim for the value of improvements from the DOTD. Therefore, this portion of the lower court's judgment is final. See Chaisson v. Cajun Bag & Supply Co., 97-1225, pp. 7-8 n. 1 (La.3/4/98), 708 So.2d 375, 380 n. 1.
[4] Pre-revision art. 2726 provided that a lessee had the right to remove improvements made to the thing let unless they were made with "lime and cement," which then gave the lessor the option to retain the improvements upon payment of a fair price. Article 2726 now provides that a lessee's right to improvements is governed by articles 493, 493.1, 493.2, and 495.