943 So.2d 521 (2006)
Robert ARSENEAUX, Sr.
v.
The GRAY INSURANCE COMPANY, Alphonse Brown and Vaughan Equipment & Trucks, Inc. and/or Vaughan Contractors, Inc.
No. 06-CA-266.
Court of Appeal of Louisiana, Fifth Circuit.
September 26, 2006.
*523 Paul E. Mayeaux, Robert L. Manard, New Orleans, Louisiana, for Plaintiff/Appellant.
Bradford H. Walker, Dara L. Baird, Baton Rouge, Louisiana, for Defendant/Appellee.
Panel composed of Judges WALTER J. ROTHSCHILD, FREDERICKA HOMBERG WICKER, and JAMES C. GULOTTA, Pro Tempore.
JAMES C. GULOTTA, Judge Pro Tempore.
Plaintiff, Robert Arseneaux, Sr., appeals a damage award in an automobile accident matter filed against The Gray Insurance Company (GIC), Alphonse Brown (Brown), and Vaughan Equipment & Trucks, Inc. and/or Vaughan Contractors, Inc. (Vaughan.) We affirm.
On March 21, 2003, Plaintiff was driving west on U.S. 90 B when his car was struck by a pick-up truck driven by Alphonse Brown. Brown was in the course of his employment with Vaughan. Suit was filed against Defendants on February 6, 2004. Prior to trial, Defendants stipulated that Brown was negligent in causing the accident, but disputed Plaintiff's claim that he suffered four levels of cervical disk problems requiring future surgery.
In a jury trial on damages only, the jury rendered a judgment for Plaintiff in the sum of $170, 570. The jury itemized Plaintiff's damages as follows:

 Past Medical Bills ---- $ 9,520;
 Future Medical Bills ---- $ 25,000;
 Future Loss of Earning Capacity ---- $ 17,000;
 Past Physical Pain and Suffering ---- $ 25,000;
 Future Pain and Suffering ---- $ 50,000;
 Past Mental Pain and Suffering ---- $ 6,250;
 Future Mental Pain and Suffering ---- $ 32,000;
 Loss of Enjoyment of Life's Pleasures
 (Past and Future) ---- $ 5,800.

The jury further declined to award past lost wages, lifetime fringe benefits, loss of household services, and past and future disability.
The verdict was reduced to judgment on August 23, 2005. On August 15, 2005, Plaintiff filed a Motion for Judgment Notwithstanding the Verdict and/or New Trial and/or Additur. The motions were denied on November 2, 2005.
On appeal, Plaintiff asserts that the jury erred in failing to award only $25,000 and not $100,000 for future medical expenses; that it erred in failing to award any damages for future disability; erred in only awarding $17,000 for future loss of earning capacity; erred in failing to award damages for loss of household services; erred in only awarding $5,800 for loss of enjoyment of life; erred in only awarding $25,000 for past physical pain and suffering; erred in only awarding $50,000 for future physical pain and suffering; erred in only awarding $6,250 for past mental pain and suffering; and erred in only awarding $32,000 for future mental pain and suffering. Plaintiff further asserts that the trial judge erred in denying Plaintiff's Motion for Notwithstanding the Verdict, New Trial and/or Additur.
Plaintiff testified that seconds after the accident, he blacked out for a few seconds. He then "jerked" and immediately felt that something was wrong. He said he felt extreme pain in his neck and back, with shooting pain down his arms into his fingers. Plaintiff also said his fingers tingled and his hand was numb. Shortly after the accident he went to the Parish's employees' physician, Dr. David Reiss at Elmwood Medical Center, as required by the Parish when an employee is in an accident. He told the doctor he was dizzy and his neck was hurting "real bad." Later, Plaintiff complained to his wife and adult children about his pain, which persisted through the next week. Plaintiff returned to Dr. Reiss five days later with the same *524 complaints. Unsatisfied with Dr. Reiss, he sought treatment at a physical therapy center where he underwent chiropractic manipulations.
Plaintiff went to physical therapy for five or six months. When he did not obtain relief from the pain, he was advised to get a Magnetic Resonance Imaging (MRI) test. Based on those findings of damage to Plaintiff's neck, the doctor at The Center for Physical Medicine referred Plaintiff to Dr. Bradley Bartholomew, a neurosurgeon. Plaintiff complained to Dr. Bartholomew about headaches, shooting pains down his arms, numbness in the hands, and severe pain in his neck. Dr. Bartholomew ordered nerve conduction studies. This doctor concluded that Plaintiff needed a four-level cervical disk fusion. Plaintiff stated he intended to schedule the surgery following the trial, but delayed, because of bills he owed, and because of the residual effects, he may not have a job after the surgery. He noted he has had to balance the risks associated with the surgery against the risks without the surgery. In addition, the Parish of Jefferson, Plaintiff's employer, sent him to Dr. Robert Applebaum, a neurosurgeon, for evaluation.
Plaintiff testified that the only other automobile accident he had been involved in occurred when he was fifteen years old. He contended he had never had neck pain that required medical treatment from a doctor until after the accident. Plaintiff also denied having tingling and numbness in his hands before the accident.
Before he was employed by the Parish, Plaintiff worked with or as a self-employed general contractor for at least 15 years. During the two years prior to the accident and subsequent thereto, Plaintiff had been employed by the Parish as an engineer. He was responsible for inspecting all of the underground pipe work in new subdivisions. In that job, he was required to climb in and out of manholes, as well as lift and transport manhole covers.
Plaintiff continued to work after the accident. However, he said that he avoided lifting heavy objects. Sometime after the accident, he stated the Parish placed him on light duty work. However, he admitted he worked overtime (over 40 hours per week) in 2003, 2004, and 2005. On the other hand, he stated he started working fewer hours in 2005. Plaintiff explained that he has to work overtime when he is told to do so by the Parish. Plaintiff said he takes off work when his neck is severely painful.
According to Arseneaux, his wife and daughter, Plaintiff was active prior to the accident. He jogged, walked for exercise, played volleyball, and tennis with his wife. He played basketball on the weekends with his grandchildren. Plaintiff performed most of the vacuuming in the house, all of the outside yard work, and routinely washed the car and changed the oil. Since the accident, he walks, but cannot jog. He has stopped the other activities because he is fearful of further damaging his neck. His wife now performs all or most of the house related chores.
Photographs of the accident show that neither car sustained any damage.
The treating physician, Dr. Bartholomew, testified that Plaintiff was 56 years of age when he saw him. He denied any neck injuries prior to the accident. Plaintiff described the current accident, and noted that he went to his employer's doctor first and then to a chiropractor. Arseneaux complained of neck pain shooting across his shoulders, headaches starting from the back of the neck, and radiating pain down his arms to his last two fingers, with the pain less severe in the right arm. The complaints were consistent with herniated *525 disks that were irritating the nerve roots.
After reviewing the MRI taken previous to Dr. Bartholomew's involvement in the case, Dr. Bartholomew believed that Plaintiff has four levels in the neck causing the majority of the problems. The doctor testified that Plaintiff has herniated disks and bone spurs pushing against the spinal cord at all four levels. The most troublesome areas are at the C5-6 level and between the C5-6 and C6-7 levels, where there is compression of the spinal cord. There was also evidence of an annular tear (outer shell containing the disk material) between the third and fourth disks. That area has nerves that can cause pain if irritated. The doctor noted that everyone has degenerative disk disease to some extent manifested by bone spurs or osteophytes, which may or may not cause pain.
Dr. Bartholomew ordered electromyograph (EMG) and nerve conduction tests to obtain information as to whether the nerves were working properly or if the nerves were adversely affecting the muscle. The results showed upper extremity sensory neuropathy (which causes numbness and tingling) and bilateral mid-cervical radiculopathies (which is radiating pain from irritation of a nerve root). He found the test results consistent with nerve compression and Plaintiff's symptoms. He noted that sensory neuropathy is one of the first indications that a nerve is compressed. Plaintiff underwent two more MRIs of the cervical spine. They were unchanged from the first one. Dr. Bartholomew testified that Plaintiff's pain has worsened since his initial visit.
Dr. Bartholomew recommended surgery to the Plaintiff to remove the disk material pushing against the spinal cord and fusing each of the 3-4, 4-5, 5-6, and 6-7 disks to prevent the disks from collapsing. The doctor testified that he was attempting to arrange the surgery for November or early December of 2005. Dr. Bartholomew concluded that Plaintiff's four level disk herniations and pain is more probably than not caused by the accident.
Jeffrey Carlisle testified as a vocational rehabilitation expert. He reviewed the records in Plaintiff case, including depositions and reports by Plaintiff; Shael Wolfson, an economic expert; Dr. William Armington; Dr. William Batherson (Center for Physical Therapy); Dr. Reiss; Dr. Bartholomew; Diagnostic Imaging; Dr. Morteza Shamsnia; Dr. Applebaum; The Center for Physical Medicine; Elmwood Industrial Medical Center; and East Bank Imaging. He concluded that Plaintiff is capable of continuing to work in his present job with or without the surgery since his employer is accommodating Plaintiff's physical restrictions. Mr. Carlisle neither met with Plaintiff nor talked to his employer prior to trial.
Dr. William Armington, an expert in radiology and neuroradiology agreed that Plaintiff has problems along the entire cervical spine. However, he disagreed with Dr. Bartholomew that the trauma caused the problems. While he did not examine Plaintiff, he reached his conclusions after reviewing Plaintiff's three cervical MRIs, one lumbar MRI, the various medical records, and the depositions of Dr. Bartholomew and Dr. Shamsnia. He did not testify relative to the necessity for surgery, or to the level of pain experienced by Plaintiff.
Dr. Armington testified that the tests show degenerative disk disease at all levels in the neck. The tests performed indicated to him that the degenerative disk problem was present prior to the accident. This expert diagnosed Plaintiff with long-standing degenerative disk disease or degenerative facet joint disease of the cervical spine measuring in years.
*526 Dr. Armington further testified that it was unlikely that a single event could cause these changes. Furthermore, he testified that he would be "very surprised" if Plaintiff was not experiencing symptoms prior to the accident given the severity of the findings. However, he admitted that many people have degenerative disk disease or changes in the lumbar and cervical spine, and go about their daily business without any symptoms. He also agreed that asymptomatic disk conditions can become symptomatic from a motor vehicle collision.
1) JNOV
A Judgment Notwithstanding the Verdict (JNOV) is provided for by La. C.C.P. art. 1811, and may be granted on the issue of damages, the issue of liability or on both. Smith v. State, Dept. of Transp. & Development, 04-1317, p. 12 (La.3/11/05), 899 So.2d 516, 524. A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict, not merely when there is a preponderance of evidence for the mover. Smith, 04-1317 at p. 12, 899 So.2d at 524-525. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. Smith, 04-1317 at p. 12, 899 So.2d at 525. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. Smith, 04-1317 at p. 13, 899 So.2d at 525.
When reviewing a district court's grant of a JNOV, an appellate court must first decide if the district judge erred in granting the JNOV by employing the above-mentioned criteria in the same manner as the district judge did in determining whether the motion should have been granted. Id. This is a rigorous standard and is based upon the principle that when there is a jury, the jury is the trier of fact. Trunk v. Medical Center of Louisiana at New Orleans, 04-0181, p. 5 (La.10/19/04), 885 So.2d 534, 537 (citing Joseph v. Broussard Rice Mill, Inc., 00-0628, pp. 4-5 (La.10/30/00), 772 So.2d 94, 99); Smith, 04-1317 at p. 13, 899 So.2d at 525.
In reviewing the evidence and award by the jury in this case, we conclude that the jury agreed with Plaintiff that he suffered some injuries in the accident. However, considering the amount of the award, the jury apparently did not believe that all of the problems with his neck were caused by the accident. The jury was apparently convinced by Dr. Armington's testimony that Plaintiff had the deteriorating disks and herniations before the accident, and that given the severity of the problems, must have suffered some neck problems in the past. Notably, photographs of the accident show that neither car sustained any damage indicating that the impact was not severe. The photographs cast some doubt on Plaintiff's allegation that he "blacked out" from the impact. Furthermore, while he should not be penalized for continuing to work while in pain, Plaintiff did not corroborate his claim that he was working on light duty with his employer and not lifting heavy objects. Nonetheless, the jury correctly awarded Plaintiff an amount it deemed reasonable for the aggravation of a prior condition.[1] Thus, the trial judge did not err in denying the JNOV.
*527 2) JURY AWARD
An appellate court may not disturb the conclusions reached by a jury regarding factual matters in the absence of "manifest error" or unless a particular finding of fact was "clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Duncan v. Kansas City Southern Railway Co., 00-0066, p. 3 (La.10/30/00), 773 So.2d 670, 675. In making this determination, the inquiry is whether the factual findings are reasonable in light of the entire record, not whether the trier of fact was right or wrong. Duncan, 00-0066 at p. 3, 773 So.2d at 675. If, after reviewing the entire record, the trial court's findings are reasonable, then the appellate court may not reverse, even if convinced it would have weighed the evidence differently sitting as the trier of fact. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990).
In reviewing an award of damages by the trial court, the appellate court is limited to a review for abuse of discretion. The discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Miller v. Clout, 03-0091, p. 7 (La.10/21/03), 857 So.2d 458, 463, quoting Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). Further, only after a court has, for articulable reasons, determined that an award is improper may it look to other awards in comparable cases for guidance as to what might be an appropriate award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993); Raspanti v. Liberty Mut. Ins. Co., 05-623, p. 5 (La.App. 5th Cir. 1/31/06), 922 So.2d 631, 635.
The answers to the jury interrogatories were meticulous, and it is clear that the jury carefully considered each item of the award. Under these circumstances, we cannot say the jury erred nor can we say that the trail judge erred in denying the JNOV or the motion for new trial and/or additur.
Accordingly, the judgment of the trial court is affirmed. Costs of the appeal are to be paid by Defendant.
AFFIRMED.
NOTES
[1] We applied the criteria for JNOV to this evidence, and concluded the facts and inferences do not point so strongly in favor of Plaintiff that reasonable persons could not arrive at a contrary verdict. Smith v. State, Dept. of Transp. & Development, 04-1317, p. 12 (La.3/11/05), 899 So.2d 516, 524-525.